Justice Ginsburg
delivered the opinion of the Court.
The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. See 28 U. S. C. § 2679(b)(1). When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify *230 that the employee “was acting within the scope of his office or employment at the time of the incident out of which the claim arose.” § 2679(d)(1), (2). Upon the Attorney General’s certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act (FTCA), 60 Stat. 842. If the action commenced in state court, the case is to be removed to a federal district court, and the certification remains “conclusiv[e]... for purposes of removal.” § 2679(d)(2).
In Gutierrez de Martinez v. Lamagno, 515 U. S. 417, 420 (1995), we held that the Attorney General’s Westfall Act scope-of-employment certification is subject to judicial review. Today, we address three further questions regarding the Westfall Act’s operation: (1) Is Attorney General certification proper when a federal officer denies the occurrence of the tortious conduct alleged by the plaintiff; (2) does § 2679(d)(2), by rendering the Attorney General’s certification “conclusiv[e] ... for purposes of removal,” bar remand even if the federal court determines that the United States should not be substituted as defendant in place of the federal employee; and (3) does 28 U. S. C. § 1447(d)’s bar on appellate review of remand orders override §2679(d)(2)’s direction that, for purposes of removal, the Attorney General’s certification is conclusive. The first two questions were advanced in the petition for certiorari; in our order granting review, we asked the parties to address the impact of § 1447(d) on this case.
Pat Osborn, plaintiff-petitioner in the civil action now before the Court, sued federal employee Barry Haley in a Kentucky state court. She alleged that Haley tortiously interfered with her employment with a private contractor and conspired to cause her wrongful discharge. Osborn further alleged that Haley’s efforts to bring about her discharge were outside the scope of his employment. The United States Attorney, serving as the Attorney General’s delegate, *231 countered Osborn’s allegations by certifying that Haley “was acting within the scope of his employment... at the time of the conduct alleged in [Osborn’s] complaint.” App. to Brief in Opposition 23 (hereinafter Luber App.). Based on this certification, the case was removed to the United States District Court for the Western District of Kentucky, as § 2679(d)(2) instructs.
In the federal forum, the United States Attorney denied the tortious conduct Osborn attributed to Haley, asserting that the wrongdoing she alleged never occurred. Accepting Osborn’s allegations as true, the District Court entered an order that rejected the Attorney General’s Westfall Act certification, denied the Government’s motion to substitute the United States as defendant in place of Haley, and remanded the case to the state court. On appeal, the Sixth Circuit vacated the District Court’s order, and instructed that court to retain jurisdiction over the case.
We affirm the Court of Appeals’ judgment. On the merits, we agree with the Sixth Circuit that the District Court, in denying substitution of the United States as defendant in lieu of Haley, misconstrued the Westfall Act. Substitution of the United States is not improper simply because the Attorney General’s certification rests on an understanding of the facts that differs from the plaintiff’s allegations. The United States, we hold, must remain the federal defendant in the action unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment. On the jurisdictional issues, we hold that the Attorney General’s certification is conclusive for purposes of removal, £ e., once certification and removal are effected, exclusive competence to adjudicate the ease resides in the federal court, and that court may not remand the suit to the state court. We also hold that § 1447(d)’s bar on appellate review of remand orders does not displace § 2679(d)(2), which *232 shields from remand an action removed pursuant to the Attorney General’s certification.
I
Petitioner Pat Osborn worked for Land Between the Lakes Association (LBLA), a private company that contracted with the United States Forest Service to provide staff for the Land Between the Lakes National Recreation Area in Kentucky.[1] While employed by LBLA, Osborn applied for a trainee position with the Forest Service. Respondent Barry Haley, a Forest Service officer, was responsible for the Service’s hiring process. At a meeting with LBLA employees, Haley announced that he had hired someone else for the job Osborn sought. Osborn asked why Haley did not inform her before the meeting, and she made a joke at Haley’s expense. After the meeting, Osborn’s supervisor told her to apologize to Haley; she refused.
A few weeks later, Osborn filed a complaint with the United States Department of Labor, asking the Department to investigate whether the Forest Service, in its hiring decision, had given appropriate consideration to the veterans’ preference points to which she was entitled. The Department’s investigator, Robert Kuenzli, after interviewing Haley, concluded that the hiring procedure had been handled correctly. Kuenzli so informed Osborn, who then asked him to close her complaint. On the same day LBLA’s executive director, respondent Gaye Luber, summoned Osborn and demanded that she apologize to Haley for “not being a good Forest Service partner.” Complaint ¶ 18, Luber App. 4. Osborn again refused. Two days later, she was fired.
Osborn filed suit against Haley, Luber, and LBLA in a Kentucky state court. She alleged that Haley tortiously interfered with her employment relationship with LBLA and *233 conspired to cause her wrongful discharge. Specifically, she charged that Haley maliciously induced Luber to fire her, and that Haley did so in retaliation for Osborn’s Department of Labor complaint requesting a veterans’ preference inquiry. Complaint ¶29, id., at 7. In response the local United States Attorney, invoking the Westfall Act, certified on behalf of the Attorney General that Haley “was acting within the scope of his employment with the U. S. Forest Service, at the time of the conduct alleged in [Osborn’s] complaint.” Id., at 23. As is customary, the certification stated no reasons for the determination.[2]
In the Westfall Act, Congress instructed:
“Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General *234 shall conclusively establish scope of office or employment for purposes of removal” 28 U. S. C. § 2679(d)(2) (emphasis added).
Citing this provision, as well as the federal officer removal statute, § 1442,[3] the United States removed the case to the United States District Court for the Western District of Kentucky. The United States Attorney notified the District Court that the United States should be substituted for Haley as defendant, and filed a motion to dismiss on the ground that Osborn had not exhausted administrative remedies, as required by the FTCA.
Osborn opposed the substitution and the motion to dismiss. She argued that Haley’s conduct was outside the scope of his employment, hence the Westfall Act afforded him no immunity. As support for her opposition, Osborn submitted a memorandum of understanding between LBLA and the Forest Service, which cautioned Forest Service employees against involvement in LBLA employment decisions.
Apparently under the impression that the United States, at that preliminary stage, did not dispute Osborn’s factual allegations, the District Court declined to conduct an evidentiary hearing. Under Kentucky law, the court observed, if Osborn’s allegations were true, Haley had acted outside the scope of his employment. In the District Court’s view the closeness in time of Osborn’s request for a Department of Labor investigation, Kuenzli’s call to Haley, and Luber’s demand for an apology justified an inference that Haley interfered with Osborn’s employment in violation of the LBLA-Forest Service memorandum of understanding. So reasoning, the District Court overruled the Westfall Act cer *235 tification and denied substitution. Under this ruling, the United States was no longer before the court. Furthermore, the parties were not of diverse citizenship and no federal law was at issue. The District Court therefore held that it lacked subject-matter jurisdiction over the case.[4] Invoking § 1447(c),[5] the court concluded that the case must be remanded to the state court.
The United States moved for reconsideration, urging that, contrary to the District Court’s impression, the Government did contest Osborn’s factual allegations. Recalling that it had denied Osborn’s allegations in its answer to her complaint, the United States submitted sworn declarations from Haley and Luber. Haley’s stated that he was not in communication with Luber between the time of Kuenzli’s investigation and Osborn’s firing. Luber’s declaration stated that Osborn’s request for an investigation regarding her veterans’ preference points could not have had any bearing on Osborn’s termination, for Luber was unaware of the request at the relevant time. Absent contrary evidence, the Government maintained, these declarations sufficed to support the certification and the continuance of the United States as defendant in place of Haley. In the alternative, the Government sought discovery.[6]
*236 The District Court denied the Government’s reconsideration motion. The Haley and Luber declarations, the court said, clarified that the controversy centered on whether there had been any communication between Haley and Luber influencing Luber’s decision to fire Osborn. The Westfall Act would have shielded Haley, the Court suggested, had the United States admitted a Haley-Luber communication but defended its content as within the scope of Haley’s employment. Westfall Act certification was improper, the court concluded, because the United States did not admit, but instead denied, the occurrence of the event central to proof of Osborn’s claim. The District Court acknowledged disagreement among the Circuits on the availability of a Westfall Act certification when the United States “den[ies] the occurrence of the basic incident charged.” Wood v. United States, 995 F. 2d 1122, 1124 (CA1 1993) (en banc). Compare ibid, and McHugh v. University of Vermont, 966 F. 2d 67, 74-75 (CA2 1992) (prohibiting incident-denying certifications), with Heuton v. Anderson, 75 F. 3d 357, 360 (CA8 1996); Kimbro v. Velten, 30 F. 3d 1501, 1508 (CADC 1994); and Melo v. Hafer, 13 F. 3d 736, 746-747 (CA3 1994) (allowing incident-denying certifications). Choosing to follow the First Circuit’s opinion in Wood, the District Court adhered to its prior ruling that the Westfall Act certification in this case was invalid.
On appeal, the Sixth Circuit vacated the District Court’s order denying certification and substitution. 422 F. 3d 359, 365 (2005). The Court of Appeals, in accord with Heuton, *237 Kimbro, and Melo, held that a Westfall Act certification is not improper simply because the United States denies the occurrence of the incident on which the plaintiff centrally relies. 422 F. 3d, at 364. Rather, the court held, where “the Attorney General’s certification is based on a different understanding of the facts than is refleeted in the complaint, including a denial of the harm-causing incident, the district court must resolve the factual dispute.” Ibid, (quoting Melo, 13 F. 3d, at 747).
The Sixth Circuit also vacated the District Court’s order remanding the ease to the state court. Section 2679(d)(2), the Court of Appeals stressed, instructs that the “certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.” The court read that instruction to proscribe shuttling cases back to state courts and, instead, to require district court adjudication of the controversy even when a Westfall Act certification is rejected and, correspondingly, substitution of the United States as defendant is denied. 422 F. 3d, at 365. On that issue too, the Court of Appeals noted a division among the Circuits. Compare Borneman v. United States, 213 F. 3d 819, 826 (CA4 2000); Garcia v. United States, 88 F. 3d 318, 325-327 (CA5 1996); and Aliota v. Graham, 984 F. 2d 1350, 1356 (CA3 1993) (holding that a district court lacks authority to remand a case removed under § 2679(d)(2)), with Haddon v. United States, 68 F. 3d 1420, 1427 (CADC 1995); and Nasuti v. Scannell, 906 F. 2d 802, 814, n. 17 (CA1 1990) (holding remand proper when district court rejects the Attorney General’s certification). We granted certiorari. 547 U. S. 1126 (2006).
II
We consider first the Court of Appeals’ jurisdiction to review the District Court’s disposition of this case. We address in turn the questions whether the appellate court had jurisdiction to review (1) the order rejecting the Attorney *238 General’s certification and denying substitution of the United States as defendant, and (2) the order remanding the case to the state court.
A
The District Court’s rejection of certification and substitution effectively denied Haley the protection afforded by the Westfall Act, a measure designed to immunize covered federal employees not simply from liability, but from suit. See § 2(a)(5), 102 Stat. 4563; Lamagno, 515 U. S., at 425-426; H. R. Rep. No. 100-700, p. 4 (1988). Under the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541 (1949), this ruling qualifies as a reviewable final decision within the compass of 28 U. S. C. § 1291.[7]
Meeting the three criteria of Cohen, the District Court’s denial of certification and substitution conclusively decided a contested issue, the issue decided is important and separate from the merits of the action, and the District Court’s disposition would be effectively unreviewable later in the litigation. 337 U. S., at 546. See Mitchell v. Forsyth, 472 U. S. 511, 525-527 (1985) (holding that district court rejection of a defendant’s qualified immunity plea is immediately appeal-able under the Cohen doctrine because suit immunity “is effectively lost if a case is erroneously permitted to go to trial” against the immune official). As cogently explained by the Fifth Circuit in Mitchell v. Carlson, 896 F. 2d 128,133 (1990), retaining the federal employee as a party defendant
“effectively denie[s] [him] immunity from suit if [he] was entitled to such immunity under the Westfall Act. Under the Act, once the United States Attorney certifies that the federal employee acted within the scope of [his] employment, the plaintiff properly can proceed only against the United States as defendant. The federal employee remains immune from suit. By [rejecting the Attorney General’s certification], the district court sub *239 ject[s] [the employee] to the burden of defending a suit. . . , a burden from which [the Westfall Act spares him].”
Tellingly, the Courts of Appeals are unanimous in holding that orders denying Westfall Act certification and substitution are amenable to immediate review under Cohen. See Woodruff v. Covington, 389 F. 3d 1117, 1124 (CA10 2004); Mathis v. Henderson, 243 F. 3d 446, 448 (CA8 2001); Borne-man, 213 F. 3d, at 826 (CA4); Lyons v. Brown, 158 F. 3d 605, 607 (CA1 1998); Taboos v. Mlynczak, 149 F. 3d 576, 579 (CA7 1998); Coleman v. United States, 91 F. 3d 820, 823 (CA6 1996); Flohr v. Mackovjak, 84 F. 3d 386, 390 (CA11 1996); Kimbro, 30 F. 3d, at 1503 (CADC); Aliota, 984 F. 2d, at 1354 (CA3); Pelletier v. Federal Home Loan Bank of San Francisco, 968 F. 2d 865, 873 (CA9 1992); McHugh, 966 F. 2d, at 69 (CA2); Carlson, 896 F. 2d, at 133 (CA5). We confirm that the Courts of Appeals have ruled correctly on this matter.
B
In our order granting certiorari we asked the parties to address, in addition to the issues presented in the petition, this further question: Did the Court of Appeals have jurisdiction to review the District Court’s remand order, notwithstanding 28 U. S. C. § 1447(d)’s declaration that “[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise”? In answering this question, we also resolve the second question presented in the petition for certiorari — whether the West-fall Act’s rule against remanding actions removed pursuant to § 2679(d)(2) applies when the federal court determines that the United States should not be substituted as defendant in place of the federal employee. Our disposition is informed by, and tracks, the Third Circuit’s reasoning in Aliota, 984 F. 2d, at 1354-1357.
We begin with the provision we asked the parties to address: § 1447(d). That provision states in relevant part: “An order remanding a case to the State court from which it was *240 removed is not reviewable on appeal or otherwise . . . In Thermtron Products, Inc. v. Hermansdorfer, 423 U. S. 336 (1976), we held that the preceding subsection, § 1447(c), confined §1447(d)’s scope. Under § 1447(d), the Court explained, “only remand orders issued under § 1447(c) and invoking the [mandatory] grounds specified therein — that removal was improvident and without jurisdiction — are immune from review.” Id., at 346.[8] Thermtron had been properly removed to the federal court. The sole reason the District Court gave for remanding it was that court’s crowded docket. This Court held the remand order reviewable, observing that § 1447(c) could not sensibly be read to confer on the district courts' “carte blanche authority ... to revise the federal statutes governing removal.” Id., at 351. See also Quackenbush v. Allstate Ins. Co., 517 U. S. 706 (1996) (holding abstention-based remand order immediately appealable). But see Gravitt v. Southwestern Bell Telephone Co., 430 U. S. 723 (1977) (per curiam) (holding unreviewable a remand order purporting to rest on a ground within the scope of § 1447(c)).
The United States urges us to apply Thermtron and hold the remand order in this case reviewable because that order was not based on a ground specified in § 1447(c). To determine whether Thermtron controls, we must start with an examination of the Westfall Act’s design, particularly its prescriptions regarding the removal and remand of actions filed in state court.
As earlier noted, see supra, at 229-230, the Act grants the Attorney General authority to certify that a federal employee named defendant in a tort action was acting within *241 the scope of his or her employment at the time in question. § 2679(d)(1), (2). If the action is commenced in a federal court, and the Attorney General certifies that the employee “was acting within the scope of his office or employment at the [relevant] time,” the United States must be substituted as the defendant. § 2679(d)(1). If the action is launched in a state court, and the Attorney General makes the same certification, the action “shall be removed” to the appropriate federal district court, and again the United States must be substituted as the defendant. § 2679(d)(2). Of prime importance to our decision, § 2679(d)(2) concludes with the command: “Th[e] certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.” (Emphasis added.)
This directive markedly differs from Congress’ instruction for eases in which the Attorney General “refuse[s] to certify scope of office or employment.” § 2679(d)(3). In that event, the defendant-employee may petition the court in which the action was instituted to make the scope-of-employment certification. If the complaint was filed in a state court, the Attorney General may remove the case to the appropriate federal court, but he is not obliged to do so. Ibid. If the court, state or federal, issues the certification, “the United States shall be substituted as the party defendant.” Ibid. If removal has occurred, and thereafter “the district court determines that the employee was not acting within the scope of his office or employment, the action . . . shall be remanded to the State court.” Ibid, (emphasis added).
The Act’s distinction between removed cases in which the Attorney General issues a scope-of-employment certification, and those in which he does not, leads us to conclude that Congress gave district courts no authority to return cases to state courts on the ground that the Attorney General’s certification was unwarranted. Absent certification, § 2679(d)(3) directs that the case must be remanded to the *242 state court in which the action commenced. In contrast, when the Attorney General certifies scope of employment, his certificate “conclusively establish[es] scope of office or employment for purposes of removal.” § 2679(d)(2) (emphasis added). Section 2679(d)(2) does not preclude a district court from resubstituting the federal official as defendant for purposes of trial if the court determines, postremoval, that the Attorney General’s scope-of-employment certification was incorrect. For purposes of establishing a forum to adjudicate the case, however, § 2679(d)(2) renders the Attorney General’s certification dispositive.[9]
Were it open to a district court to remand a removed action on the ground that the Attorney General’s certification was erroneous, the final instruction in § 2679(d)(2) would be weightless. The Attorney General’s certification would not “conclusively establish scope of office or employment” for either trial or removal. Instead, the Attorney General’s scope certification would supply only a tentative basis for removal, rather than a conclusive one. In Lamagno, the Court unanimously agreed that Congress spoke unambiguously on this matter: Congress adopted the “conelusiv[e]... for purposes of removal” language to “foreclose needless shuttling of a case from one court to another.” 515 U. S., at 433, n. 10; see id., at 440 (Souter, J., dissenting) (“[Tjhere is nothing equivocal about [§ 2679(d)(2)’s] provision that once a state tort action has been removed to a federal court after a certification by the Attorney General, it may never be remanded to the state system.”).
*243 With the Westfall Act’s provisions on removal of actions filed in state court in clear view, we return to the question whether an order remanding a case removed pursuant to § 2679(d)(2) is reviewable. Thermtron held that § 1447(d) must be read together with § 1447(c). There is stronger cause, we conclude, to hold that § 1447(c) and (d) must be read together with the later enacted § 2679(d)(2). Both § 1447(d) and § 2679(d)(2) are antishuttling provisions. Each aims to prevent “prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.” United States v. Rice, 327 U. S. 742, 751 (1946). Section 2679(d)(2) is operative when the Attorney General certifies scope of employment, triggering removal of the case to a federal forum. At that point, § 2679(d)(2) renders the federal court exclusively competent and categorically precludes a remand to the state court.
The command that the Attorney General’s certification “shall conclusively establish scope of office or employment for purposes of removal,” § 2679(d)(2), differentiates certified Westfall Act cases from the typical ease remanded for want of subject-matter jurisdiction. Ordinarily, when the plaintiff moves to remand a removed case for lack of subject-matter jurisdiction, the federal district court undertakes a threshold inquiry; typically the court determines whether complete diversity exists or whether the complaint raises a federal question. In Attorney General certified Westfall Act cases, however, no threshold determination is called for; the Attorney General’s certificate forecloses any jurisdictional inquiry. By declaring the Attorney General’s certification “conclusive” as to the federal forum’s jurisdiction, Congress has barred a district court from passing the case back to the state court where it originated based on the court’s disagreement with the Attorney General’s scope-of-employment determination.
Our decision that § 2679(d)(2) leaves the district court without authority to send a certified case back to the state *244 court scarcely means that whenever the district court misconstrues a jurisdictional statute, appellate review of the remand is in order. Such an exception would, of course, collide head on with § 1447(d), and with our precedent. See, e. g., Things Remembered, Inc. v. Petrarca, 516 U. S. 124, 127-128 (1995). Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way— from state to federal court — does today’s decision hold sway.
In short, of the two antishuttling commands, § 1447(d) and § 2679(d)(2), only one can prevail. We hold that § 2679(d)(2) controls. Tailor-made for Westfall Act eases, § 2679(d)(2) is a forum-selecting rule Congress made “conclusive,” beyond the ken of district courts to revise. See Thermtron, 423 U. S., at 351.
C
In Lamagno, the Court considered, but did not definitively resolve, the question whether Article III permits “[tjreating the Attorney General’s certification as conclusive for purposes of removal but not for purposes of substitution.” 515 U. S., at 434. It was argued in that case that if certification is rejected and substitution denied “because the federal court concludes that the employee acted outside the scope of his employment, and if the tort plaintiff and the [defendant-employee] are not of diverse citizenship,... then the federal court will be left with a case without a federal question to support the court’s subject-matter jurisdiction.” Id., at 434-435. Lamagno was an action commenced in federal court on the basis of diversity of citizenship, so there was in that case “not even the specter of an Article III problem.” Id., at 435.
In the case before us, the question would arise only if, after full consideration, the District Court determines that Haley in fact engaged in the tortious conduct outside the scope of his employment charged in Osborn’s complaint. At that point, however, little would be left to adjudicate, at least as to Haley’s liability. Because a significant federal question *245 (whether Haley has Westfall Act immunity) would have been raised at the outset, the case would “aris[e] under” federal law, as that term is used in Article III. See Verlinden B. V. v. Central Bank of Nigeria, 461 U. S. 480, 493 (1983). Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U. S. 343, 350-351 (1988) (when federal character of removed case is eliminated while the case is sub judice, court has discretion to retain jurisdiction, to remand, or to dismiss); cf. Mine Workers v. Gibbs, 383 U. S. 715, 725 (1966) (pendent jurisdiction may be exercised when federal and state claims have a “common nucleus of operative fact” and would “ordinarily be expected to [be tried] all in one judicial proceeding”). See also 28 U. S. C. § 1367 (“Supplemental jurisdiction”). “[Considerations of judicial economy, convenience and fairness to litigants,” Gibbs, 383 U. S., at 726, make it reasonable and proper for a federal court to proceed to final judgment, once it has invested time and resources to resolve the pivotal seope-of-employment contest. Thus, under the precedent that guides us, the Westfall Act’s command that a district court retain jurisdiction over a case removed pursuant to § 2679(d)(2) does not run afoul of Article III.
III
With the jurisdictional issues resolved, we reach the principal question raised by petitioner Osborn: whether the United States Attorney validly certified that Haley “was acting within the scope of his employment ... at the time of the conduct alleged in the complaint.” Luber App. 23. We note first that the certificate is formally in order; it closely tracks the language of the Westfall Act. See § 2679(d)(2) (authorizing certification “that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose”). In *246 Lamagno, we held that the Attorney General’s certification is “the first, but not the final word” on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant. 515 U. S., at 432. A plaintiff may request judicial review of the Attorney General’s scope-of-employment determination, as Osborn did here.
As earlier recounted, see swpra, at 234, the District Court initially accepted Osborn’s allegations as true because it believed that the United States did not dispute them. Applying Kentucky law, that court determined that “Haley’s alleged actions occurred outside the scope of his employment.” App. to Pet. for Cert. 24a. In a motion for reconsideration, the Government clarified that, far from admitting Osborn’s allegations, it disputed the very occurrence of the harm-causing conduct Osborn alleged. In support of the motion, the Government submitted affidavits from Haley and Luber denying that they engaged in the conduct ascribed to them in Osborn’s complaint. The Government contended that Haley remained within the proper bounds of his employment at the relevant time and place because the wrongdoing Osborn alleged never happened.
The Government’s reconsideration motion asked the District Court to resolve the factual dispute, i. e., to determine whether, as the complaint alleged, Haley prevailed upon Luber to discharge Osborn, or whether, as Haley asserted, he never communicated with Luber about Osborn’s LBLA employment. The court did not grant the Government’s request for resolution of the factual dispute. Instead, it held the Westfall Act certification invalid precisely because the Government denied that Haley engaged in harm-causing conduct.
Two Courts of Appeals have held that Westfall Act certification is improper when the Government denies the occurrence of the alleged injury-causing action or episode. See Wood, 995 F. 2d, at 1123 (CA1); McHugh, 966 F. 2d, at 74-75 *247 (CA2). The Sixth Circuit, in this ease, and several other Courts of Appeals have held that a plaintiff’s allegation of conduct beyond the scope of a federal official’s employment does not block certification where the Government contends that the alleged tortious conduct did not occur. See Heuton, 75 F. 3d, at 360 (CA8); Kimbro, 30 F. 3d, at 1508 (CADC); Melo, 13 F. 3d, at 746-747 (CA3). We agree that Westfall Act certification is proper when a federal officer charged with misconduct asserts, and the Government determines, that the incident or episode in suit never occurred.
A
The Westfall Act grants a federal employee suit immunity, we reiterate, when “acting within the scope of his office or employment at the time of the incident out of which the claim arose.” § 2679(d)(1), (2). That formulation, we are persuaded, encompasses an employee on duty at the time and place of an “incident” alleged in a complaint who denies that the incident occurred. See Wood, 995 F. 2d, at 1134 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting) (“[Sjurely the statute applies with the same force whether a postal service driver says that he did not hit the plaintiff’s ear or that he did so but was not at fault.”); Meló, 13 F. 3d, at 747. And just as the Government’s certification that an employee “was acting within the scope of his employment” is subject to threshold judicial review, Lamagno, 515 U. S., at 434, so a complaint’s charge of conduct outside the scope of employment, when contested, warrants immediate judicial investigation. Were it otherwise, a federal employee would be stripped of suit immunity not by what the court finds, but by what the complaint alleges.[10]
*248 In sum, given the purpose of the Westfall Act to shield covered employees not only from liability but from suit, it is altogether appropriate to afford protection to a “negligent . . . employee ... as a matter of course.” Wood, 995 F. 2d, at 1135 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). But it would make scant sense to read the Act as leaving an employee charged with an intentional tort[11] to fend for himself when he denies wrongdoing and asserts he “engaged only in proper behavior occurring wholly within the scope of his office or employment.” Ibid. See also Heuton, 75 F. 3d, at 360 (“[I]t is illogical to assume that Congress intended to protect guilty employees but desert innocent ones.”).[12]
Willingham v. Morgan, 395 U. S. 402 (1969), in which the Court construed the federal officer removal statute, 28 *249 U. S. C. § 1442, supports our reading of the Westfall Act.[13] Section 1442(a)(1) allows an officer of the United States to remove a civil action commenced in state court if the officer is “sued in an official or individual capacity for any act under color of such office.” In Willingham, a federal inmate sued two federal prison officials in state court, alleging that they had assaulted, beaten, and tortured him. 395 U. S., at 403. The defendants removed pursuant to § 1442(a)(1), and the District Court upheld their defense of official immunity. The Tenth Circuit reversed, reading § 1442(a)(1) to permit removal only when a defendant “exclude[s] the possibility that the suit is based on acts or conduct not justified by his federal duty.” Morgan v. Willingham, 383 F. 2d 139, 141 (1967). We rejected that narrow construction of the statute and held § 1442 “broad enough to cover all cases where federal officers can raise a colorable defense arising out of the duty to enforce federal law.” 395 U. S., at 406-407.
The plaintiff in Willingham disputed that the defendant federal officials had acted under color of office. He alleged that they “had been acting on a frolic of their own which had no relevancy to their official duties as employees or officers of the United States.” Id., at 407 (internal quotation marks omitted). The Court held that the officers “should have the opportunity to present their version of the facts to a federal, not a state, court.” Id., at 409 (emphasis added).
We see no reason to conclude that the Attorney General’s ability to remove a suit to federal court under § 2679(d)(2), unlike a federal officer’s ability to remove under §1442, should be controlled by the plaintiff’s allegations. In Willingham, the federal officer’s “relationship to [the plaintiff] derived solely from their official duties.” Ibid. Similarly *250 here, Haley interacted with Osborn and Luber only through his employment as a Forest Service officer.[14] For purposes of removal under § 1442(a), the defendants in Willingham were not required to accept the truth of the plaintiff’s allegations that they were “on a frolic of their own,” id., at 407 (internal quotation marks omitted), and had tortured plaintiff “out of malice,” 383 F. 2d, at 140 (internal quotation marks omitted). So here, for purposes of removal under § 2679(d)(2), Haley and the Government were not required to accept as true Osborn’s allegations that Haley “maliciously induced” her dismissal from LBLA “in retaliation for plain *251 tiff filing a veterans’ preference inquiry.” Complaint ¶29, Luber App. 7. Haley, like the defendant in Willingham, may have been on a frolic of his own as Osborn alleged, and therefore may not be entitled to immunity. But like the officers in Willingham, he should have the opportunity to “present [his] version of the facts to a federal . . . court.” 395 U. S., at 409.
B
Tugging against our reading of the Westfall Act, we recognize, is a “who decides” concern. If the Westfall Act certification must be respected unless and until the District Court determines that Haley, in fact, engaged in conduct beyond the scope of his employment, then Osborn may be denied a jury trial. Compare Wood, 995 F. 2d, at 1126,1130, with id., at 1134-1138 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). Should the District Court find that Haley did not maliciously induce Luber to discharge Osborn, but instead interacted with Luber and Osborn only within the proper bounds of his employment, Osborn will lose on the merits with no access to a jury of her peers.[15] “This is not a small objection,” for the issue “that goes to the heart of the merits, as well as to the validity of the certificate,” will likely turn on the credibility of Osborn, Haley, and Luber, *252 and credibility “may be well suited for jury resolution.” See id., at 1136-1137.[16]
Under the Westfall Act, however, Congress supplanted the jury in covered cases. See § 2679(d)(1) — (3). Upon certification, the action is “deemed to be . . . brought against the United States,” ibid., unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of his employment. The Seventh Amendment, which preserves the right to a jury trial in suits at common law, we have held, does not apply to proceedings against the sovereign. Lehman v. Nakshian, 453 U. S. 156 (1981). See also §2402 (actions against the United States ordinarily “shall be tried by the court without a jury”). Thus, at the time the district court reviews the Attorney General’s certification, the plaintiff has no right to a jury trial. See Kimbro, 30 F. 3d, at 1509, n. 4.[17]
The Westfall Act’s core purpose also bears on the appropriate trier of any facts essential to certification. That purpose is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government’s shoulders. See supra, at 238-239. *253 Immunity-related issues, the Court has several times instructed, should be decided at the earliest opportunity. See, e. g., Hunter v. Bryant, 502 U. S. 224, 228 (1991) (per curiam) (“Immunity ordinarily should be decided by the court long before trial.”); Anderson v. Creighton, 488 U. S. 635, 646, n. 6 (1987) (“[I]mmunity questions should be resolved at the earliest possible stage of litigation.”).[18]
* * *
For the reasons stated, the judgment of the United States Court of Appeals for the Sixth Circuit is

Affirmed.

 We draw this account of the facts from the District Court’s opinion and order denying reconsideration, supplemented by the allegations in Osborn’s complaint.

 The certification read:
“I, Monica Wheatley, Acting United States Attorney, Western District of Kentucky, acting pursuant to the provisions of 28 U. S. C. § 2679(d)(2), and by virtue of the authority vested in me by the Appendix to 28 C. F. R. § 15.3 (1990), hereby certify that the Office of the United States Attorney has reviewed the available facts in this matter. On the basis of the information now available to me with respect to the allegations in the complaint, I find that the named federal defendant, Barry Haley, was acting within the scope of his employment with the U. S. Forest Service, at the time of the conduct alleged in the complaint.” Luber App. 23.

 The federal officer removal statute provides that “[a] civil action or criminal prosecution commenced in a State court against” “any officer ... of the United States . . . sued in an official or individual capacity for any act under color of such office” “may be removed ... to the district court of the United States for the district and division embracing the place wherein it is pending.” § 1442(a), (a)(1).

 The District Court did not address the propriety of removal under § 1442. See infra, at 249, n. 13.

 Section 1447(c) provides:
“A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of.just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.”

 The District Court refused to entertain the alternative argument that, if a relevant Haley-Luber conversation did occur, Haley was acting within the scope of his employment. Because Haley had declared, under oath, *236 that he did not communicate with Luber, the court was unwilling to allow discovery on the question whether, if Haley did contact Luber, he was acting within the scope of his employment. But cf. Fed. Rule Civ. Proc. 8(e)(2) (subject to Rule 11 obligations, parties may plead claims or defense “alternately or hypothetically”). We express no opinion on the propriety of the District Court’s refusal to consider the Government’s alternative pleading.

 Section 1291 provides that “[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts.”

 At the time Thermtron was decided, § 1447(c) required a district court to remand a case if it appeared that the case had been “removed improvidently and without jurisdiction.” 28 U. S. C. § 1447(c) (1970 ed.). Section 1447(c) now provides that a case must be remanded if “it appears that the district court lacks subject matter jurisdiction.”

 As explained by the Third Circuit in Melo v. Hafer, 912 F. 2d 628, 641 (1990), “[t]here are significant policy reasons why Congress would choose to give the government an unchallengeable right to have a federal forum for tort suits brought against its employees.” But Congress' endeavor to secure that right does not mean that Congress also intended to render unreviewable substitution of the United States as defendant in place of the employee. See ibid.; cf. Gutierrez de Martinez v. Lamagno, 515 U. S. 417, 430-434 (1995).

 In an opinion resembling his majority opinion in Wood v. United States, 995 F. 2d 1122 (CA1 1993) (en banc), Justice Breyer takes the view that the Attorney General may issue a Westfall Act certification if he contests the plaintiff’s account of the episode-in-suit, but he must “assume some kind of incident” in order to certify. Post, at 256 (opinion *248 concurring in part and dissenting in part). Thus he would not permit “purely incident-denying certifications,” and he places the certification here in that category. Ibid. We agree with the Wood dissenters’ appraisal of Justice Breyer’s distinction between incident-denying and incident-recharacterizing certifications: That approach would require district courts “to engage in difficult, time-wasting controversies . . . about precisely which facts pertaining to the scope of employment issue are for the district judge and which are for the jury.” 995 F. 2d, at 1136, and n. 7 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting). Accord Kimbro v. Velten, 30 F. 3d 1501,1507 (CADC 1994) (“[I]t would be impossible ... to draw a distinction between a characterization of an incident and whether or not it actually occurred.”).

 See id., at 1505 (observing that the question here presented “tend[s] to arise in cases of alleged intentional torts”).

 Under Justice Breyer’s view, when, in fact, “nothing involving the employee happened at all . . . no Westfall Act immunity would be available.” Post, at 261. He thinks this “is just as it should be.” Ibid. We disagree. Congress did not, and sensibly should not, command that innocent employees be left outside the Westfall Act’s grant of suit immunity. “Congress’ statute and its policy,” we agree, “both look in the opposite direction.” Wood, 995 F. 2d, at 1136 (joint opinion of Coffin, Selya, and Boudin, JJ., dissenting).

 The notice of removal in this case invoked § 1442 as well as §2679. In the Sixth Circuit, however, the Government did not urge § 1442 as a separate ground for reversing the District Court.

 In the context of § 1442, we have held that, to qualify for removal, a federal official must show “a nexus . . . between the charged conduct and asserted official authority.” Jefferson County v. Acker, 527 U. S. 423, 431 (1999) (internal quotation marks omitted). We need not today decide whether qualification for Westfall Act immunity is similarly limited, for in this case, a nexus plainly exists connecting the incident Osborn alleged and Haley’s federal employment. We note, however, that nothing in our opinion commits the Court to the view that Westfall Act immunity is available in fanciful situations like the one Justice Breyer hypothesizes, post, at 256, in which the plaintiff's allegations are wholly unrelated to the defendant’s federal employment.
Justice Breyer posits the ease of a Yellowstone Park forest ranger accused of misdeeds at Coney Island. He says we would find Westfall Act immunity — more accurately, we would uphold Westfall Act certification— even if the ranger’s “presence] on Coney Island must have been ... on a frolic of his own. ” Ibid. If Justice Breyer is imagining a case in which the ranger was in fact on a frolic at Coney Island, but the Attorney General nevertheless issued a Westfall Act certificate, we would not approve the certification. In that imaginary case, there would be no sense in which the ranger was acting within the scope of his employment at the time of the incident charged in the plaintiff’s complaint. If, instead, Justice Breyer has in mind a ranger accused of frolicking at Coney Island, when all the while he stayed close to his desk at Yellowstone Park, then Justice Breyer is correct: Westfall Act immunity might be available under our approach. If such a case ever shows up in a federal court, however, the district judge might be called upon to determine whether removal and substitution under § 2679(d)(2) are limited by a nexus requirement similar to the one that limits removal under § 1442.

 The overlap of certification validity and the merits of the plaintiff’s claim, evident here, is uncommon. It is unlikely to occur when the plaintiff alleges negligent conduct. The question whether a federal driver was acting within the scope of his employment at the time of an accident, for example, can generally be answered without simultaneously determining whether the federal employee drove negligently or carefully. And even when the plaintiff alleges an intentional tort, it may be possible to resolve the scope-of-employment question without deciding the merits of the claim. If a plaintiff charges a federal employee with sexual assault, for example, upon determining that there was sexual contact, a district court could find that the employee acted outside the scope of his duties, leaving the question whether the contact was consensual for jury resolution.

 But c£ 995 F. 2d, at 1137 (observing that “[i]n the ordinary tort claim arising when a government driver negligently runs into another car, jury trial is precisely what is lost to a plaintiff when the government is substituted for the employee”).

 We do not address the case in which the Attorney General refuses certification. In that event, § 2679(d)(3) allows the named defendant to “petition the court to find and certify that [he] was acting within the scope of his . . . employment.” However, the Westfall Act gives the named defendant no right to remove an uncertified case. But see 28 U. S. C. § 1442(a)(1). That right is accorded to the Attorney General only. Because the scope determination would be made in such a case before any substitution of the United States as defendant takes place, it is arguable that a jury trial of that issue would be required if the case is before a federal court. If the case was brought in a state court and the Attorney General declines to remove, the Seventh Amendment would not figure in the case, for it is inapplicable to proceedings in state court. Minneapolis & St. Louis R. Co. v. Bombolis, 241 U. S. 211,217 (1916).

 Justice Breyer suggests that, with respect to immunity defenses, our “reading of the Westfall Act works a major change in th[e] [ordinary] fact/law relationship.” Post, at 259. Nothing in our opinion touches on that relationship in the typical case in which a defendant official raises a defense of absolute or qualified immunity. We simply observe that the Westfall Act grants federal employees a species of immunity, and that, under our jurisprudence, immunity-related questions should be resolved at the earliest opportunity. Justice Breyer is right, however, to this extent. We recognize that judges have a greater factfinding role in West-fall Act cases than they traditionally have in other immunity contexts. The Act makes that inevitable. When Westfall Act immunity is in dispute, a district court is called upon to decide who the proper defendant is: the named federal employee, or the United States. That decision cannot be left for jury resolution late in proceedings without undermining the Westfall Act’s very purpose: to shift the burden of defending the suit to the United States whenever the defendant-employee was, at the relevant time, acting within the scope of his employment.