CATHARINA HAYNES, Circuit Judge,
joined by
SOUTHWICK and HIGGINSON, Circuit Judges, concurring:
I concur in the judgment of the court.[9] I write separately to address the question of sovereign immunity for the United States in more detail. As the reinstated panel opinion correctly notes, the Alien Tort Statute (“ATS”) is a jurisdictional statute but is not “stillborn.” Hernandez, 757 F.3d at 258; Sosa v. Alvarez-Machain, 542 U.S. 692, 714, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). It provides a forum in United States courts for tort claims by aliens alleging a violation of “the law of nations.”[10] 28 U.S.C. § 1350. *140 The panel majority opinion nonetheless determines that Congress must explicitly waive sovereign immunity to make such torts committed in violation of the “law of nations” actionable against the United States (substituted for one of its officers) — as eloquently described in the special concurrence filed by Judge Jones (“Special Concurrence”).[11] That may be a fair understanding of the current state of the law in this area. But I wish to address some undeveloped implications of what the Supreme Court has so far held, above all in its extended treatment of the ATS in Sosa.
As the panel majority opinion notes, Sosa holds that federal courts can recognize a “limited” number of international common law torts that fall within the rubric of the ATS. See Sosa, 542 U.S. at 712, 124 S.Ct. 2739. Left unaddressed is the question of whether any such common law torts would make the sovereign immunity of the United States unavailable. Put another way, if the United States has sovereign immunity as the Special Concurrence asserts, then I agree that it must be expressly waived in order for a lawsuit such as this one to be viable. But if there is a category of torts (violations of the law of nations, for example) that change the ordinary rules of sovereign immunity because these acts cannot be authorized by the sovereign, then a country either would lack any such immunity to waive or would not be permitted to substitute for one of its officers.
The Fourth Circuit recently discussed this possibility, noting in the context of foreign official immunity: .
Unlike private acts that do not come within the scope of foreign official immunity, jus cogens violations may well be committed under color of law and, in that sense, constitute acts performed in the course of the foreign official’s employment by the Sovereign. However, as a matter of international and domestic law, jus cogens violations are, by definition, acts that are not officially authorized by the Sovereign.
Yousuf v. Samantar, 699 F.3d 763, 775-76 (4th Cir.2012) (citing Siderman de Blake v. Republic of Argentina,[12] 965 F.2d 699, 718 *141 (9th Cir.1992) (“International law does not recognize an act that violates jus cogens as a sovereign act.”)).
In turn, jus cogens norms are a form of customary international law, a term often used instead of the phrase “law of nations.” See generally Gwynne L. Skinner, Roadblocks to Remedies: Recently Developed Barriers to Relief for Aliens Injured by U.S. Officials, Contrary to the Founders’ Intent, 47 U. Rich. L.Rev. 555, 565 (2013) (“The ATS gives federal courts jurisdiction over tort claims brought by aliens for violations of the law of nations, a term now seen as synonymous with customary international law.”); Ernest A. Young, Sorting Out the Debate over Customary International Law, 42 Va. J. Int’l L. 365, 448 (2002) (“[M]ost courts [interpreting the ATS] seem to have limited the scope of actionable customary international law to fundamental' or jus cogens norms.... ”); Justin D. Cummins, Invigorating Labor: A Human Rights Approach in the United States, 19 . Emory Int’l L.Rev. 1, 5 n. 12 (2005) (“Jus cogens ‘is now widely accepted ... as a principle of customary law (albeit of higher status).’ ” (quoting Restatement (Third) of Foreign Relations § 102 n. 6)); cf. Siderman, 965 F.2d at 715 (noting that jus cogens differs from customary international law in that “customary international law derives solely from the consent of states, [while] the fundamental and universal norms constituting jus cogens [derive from customary laws considered binding on all nations and] transcend such consent, as exemplified by the theories underlying the judgments of the Nuremberg tribunals following World War II”); Sanchez-Espinoza v. Reagan, 770 F.2d 202, 206-07 (D.C.Cir.1985) (Scalia, Circuit J.) (describing “the law of nations [as] so-called customary international law, arising from the customs and usages of civilized nations” (citation and internal quotation marks omitted)).
Although not all jus cogens norms may fall within the category of international common law torts that federal courts can recognize under Sosa, it seems logical that cognizable jus cogens norms may preclude a sovereign immunity defense. Cf. Thomas H. Lee, The Safe-Conduct Theory of the Alien Tort Statute, 106 Colum. L.Rev. 830, 879-82, 890-95, 901-08 (2006) (analyzing history, Sosa, and legislative documents from the founding era to postulate about which international common law torts are cognizable under the ATS); Sarah H. Cleveland, The Kiobel Presumption and Extraterritoriality, 52 Colum. J. Transnat’l L. 8, 17-19 (2013) (similar, but arguing for a more expansive view of which torts are cognizable, especially in the extraterritorial context); cf. also The Paquete Habana, 175 U.S. 677, 700-01, 20 S.Ct. 290, 44 L.Ed. 320 (1900) (“International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction. ...”); Estate of Amergi ex rel. Amer *142 gi v. Palestinian Auth., 611 F.3d 1350, 1363-64 (11th Cir.2010) (describing the type of international tort that federal courts may recognize under the ATS and Sosa). Plaintiffs raise this argument— that sovereign immunity may be unavailable for a category of jus cogens torts or other violations of the law of nations — but neither the reinstated panel nor the en banc opinion addresses it.
Sosa also did not address sovereign immunity vis-a-vis the ATS. In that case, the Court only considered the claims of a foreign national named Alvarez-Machain that he was kidnapped by another foreign national, Sosa, at the behest of the U.S. Drug Enforcement Administration (“DEA”). 542 U.S. at 698-99, 124 S.Ct. 2739. The Court ultimately held that the alleged international norm in question was insufficient to support a claim under the common law underlying the ATS. Id. at 712, 124 S.Ct. 2739. Sosa’s language, however, hints at the idea that the ATS contemplated something broader than merely giving jurisdiction for an action Congress authorizes: “[Tjhere is every reason to suppose that the First Congress did not pass the ATS as a jurisdictional convenience to be placed on the shelf for use by a future Congress....” Id. at 719, 124 S.Ct. 2739.
Unlike Sosa, here the United States was substituted for Mesa under the Westfall Act. Plaintiffs could have sought (but did not seek) federal-court review of the Attorney General’s scope-of-employment certification under the Westfall Act. See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995); see also Osborn v. Haley, 549 U.S. 225, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007). Indeed, given Plaintiffs’ argument that jus cogens violations are not legitimate official acts, Plaintiffs may have had a strong basis for raising such a challenge.[13] See, e.g., Yousuf, 699 F.3d at 776 (distinguishing between status- and conduct-based immunity). Moreover, I note that the Special Concurrence does not take issue with the observation that Plaintiffs chose not to pursue this viable option for challenging Mesa’s conduct.
I conclude that Plaintiffs’ argument on sovereign immunity and the ATS has some force. But in this area of great delicacy involving international diplomacy and United States sovereign immunity, I believe it is best to leave this issue to the Supreme Court or at least to a court more appropriately positioned to address these intricate issues. See Sosa, 542 U.S. at 725, 124 S.Ct. 2739 (“[Tjhere are good reasons for a restrained conception of the discretion a federal court should exercise in considering a new cause of action of this kind.”); id. at 728, 124 S.Ct. 2739 (similar); see also id. at 750, 124 S.Ct. 2739 (Scalia, J., concurring in part and concurring in the judgment) (decrying the notion that lower federal courts will be determining “perceived international norms”). Accordingly, I concur in the judgment of the en banc court.

. I also concur in the reasoning of the en banc opinion as supplemented herein.

. The parties and panel majority opinion focus on whether sovereign immunity bars an ATS suit, rather than on whether killing an *140 unarmed civilian without any provocation or just cause would violate the types of international norms contemplated by the ATS in the phrase “law of nations.” See, e.g., Hernandez, 757 F.3d at 259 (assuming arguendo that Plaintiffs averred a violation of the "law of nations” the ATS would recognize by alleging "that the United States violated the international prohibition against 'extrajudicial killings' ”). For purposes of this discussion, I will assume that killing a civilian without any provocation or just cause would violate the law of nations, as did the panel majority opinion. Id.

. Because Mesa’s conduct occurred in the United States, I do not view Kiobel v. Royal Dutch Petroleum Co.,-U.S.-, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013), cited by the government here, as barring an action under the ATS. See id. at 1669 ("[A]ll the relevant conduct took place outside the United States,” such that the ATS did not provide a United States forum for the international tort claimed in that case); see also id. at 1670 (Alito, J., concurring) ("[A] putative ATS cause of action will fall within the scope of the presumption against extraterritoriality ... unless the domestic conduct is sufficient to violate an international law norm that satisfies Sosa's requirements of definiteness and acceptance among civilized nations.”).

. At issue in Sideman was a foreign state's immunity from suit under the Foreign Sovereign Immunities Act ("FSIA”), 28 U.S.C. § 1602 et seq. 965 F.2d at 718-19. The Siderman court's discussion of jus cogens supports the views expressed in this concurrence; yet, that court ultimately found that it had no jurisdiction over a foreign state (Argentina) because the Supreme Court in Argentine Republic v. Amerada Hess Shipping Corporation, 488 U.S. 428, 433, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), has interpreted the FSIA as a complete and exclusive scheme governing for *141 eign state immunity in U.S. courts. See Siderman, 965 F.2d at 718-19; see also Amerada Hess, 488 U.S. at 433-34, 109 S.Ct. 683 (noting the Court "start[ed] from the settled proposition that the subject-matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character which to Congress may seem proper for the public good” and'holding that “the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state in our courts” (citations and internal quotation marks omitted)). Congress does not appear to have acted in the same way to define federal court jurisdiction over suits against the United States by foreign nationals under the ATS, except through the ATS itself. Therefore, it is imperative to consider jus cogens and its impact on the United States's immunity in light of the Court’s painstaking interpretation of the ATS in Sosa and the common law torts recognized therein.

. Thus, Plaintiffs' concern that people in Mesa’s situation can commit wrongful acts with impunity is not accurate. A Bivens action does not stand alone as Plaintiffs’ last resort to seek review of this tragedy. In addition to challenging the substitution by the United States, Plaintiffs may be able to seek redress in Mexican courts or through Mexican diplomatic channels. See 18 U.S.C. § 3184. State processes may also be available. See 28 U.S.C. § 2679(d)(3). Finally, Congress has exemplars both for establishing a compensation system for victims of United States government overseas torts, see 21 U.S.C. § 904, and also for waiving foreign sovereign immunity, see 28 U.S.C. § 1605(a).