(Slip Opinion)　　　　OCTOBER TERM, 2006　　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## POWEREX CORP. *v.* RELIANT ENERGY SERVICES, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 05–85.　Argued April 16, 2007—Decided June 18, 2007

Plaintiffs-respondents filed state-court suits alleging that various companies in California's energy market had conspired to fix prices in violation of state law.  Some of the defendants filed cross-claims seeking indemnity from, *inter alios,* two United States Government agencies (BPA and WAPA); a Canadian corporation (BC Hydro) wholly owned by British Columbia and thus a "foreign state" under the Foreign Sovereign Immunities Act of 1976 (FSIA); and petitioner Powerex, a wholly owned subsidiary of BC Hydro.  The cross-defendants removed the entire case to federal court, with BC Hydro and petitioner relying on the FSIA.  Plaintiffs-respondents moved to remand, arguing that petitioner was not a foreign state and that the cross-claims against BPA, WAPA, and BC Hydro were barred by sovereign immunity.  The District Court agreed and remanded.  As relevant here, petitioner appealed, arguing that it was a foreign sovereign under the FSIA, but plaintiffs-respondents rejoined that the appeal was jurisdictionally barred by 28 U. S. C. §1447(d), which provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  The Ninth Circuit held that §1447(d) did not preclude it from reviewing substantive issues of law that preceded the remand order, but affirmed the holding as to petitioner's foreign-state status.

*Held:* Section 1447(d) bars appellate consideration of petitioner's claim that it is a foreign state for FSIA purposes.  Pp. 3–14.

　　(a) Appellate courts' authority to review district-court orders remanding removed cases to state court is substantially limited by statute.  Section 1447(d) is read *in pari materia* with §1447(c), so that only remands based on the grounds specified in the latter are

shielded by the review bar mandated by the former. *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336, 345–346. For purposes of this case, it is assumed that the grounds specified in §1447(c) are lack of subject-matter jurisdiction and defects in removal procedure. Cf. *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 711–712. Given the proceedings below, review of the remand order is barred only if it was based on lack of subject-matter jurisdiction. Pp. 3–5.

(b) Nothing in §1447(c)'s text supports the claim that a case cannot be remanded for lack of subject-matter jurisdiction within the meaning of that provision if the case was properly removed in the first instance. Indeed, statutory history conclusively refutes the argument that §1447(c) is implicitly limited in such a manner. When a district court remands a properly removed case because it nonetheless lacks subject-matter jurisdiction, the remand is covered by §1447(c) and shielded from review by §1447(d). Pp. 5–7.

(c) The District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction and so §1447(d) bars appellate review. As an initial matter, it is clear from the record that the court was purporting to remand for lack of subject-matter jurisdiction. Even assuming that §1447(d) permits appellate courts to look behind a district court's characterization of the basis for the remand, such review is hereby limited to ascertaining whether the characterization was colorable. In this case, the only plausible explanation of the District Court's remand was that it believed that it lacked the power to adjudicate the claims against petitioner once it had determined that petitioner was not a foreign state and that the other cross-defendants had sovereign immunity. It is unnecessary to determine whether that belief was correct; it was at least debatable. Petitioner contends instead that the District Court was actually remanding based on *Carnegie-Mellon Univ.* v. *Cohill*, 484 U. S. 343, 357, which authorizes remand when a district court declines to exercise supplemental jurisdiction. This is implausible. The District Court never mentioned the possibility of supplemental jurisdiction, and petitioner does not appear to have argued that the claims against it could be retained based on supplemental jurisdiction. Pp. 7–10.

(d) The Ninth Circuit held that §1447(d) does not preclude reviewing a district court's substantive determinations that precede a remand order, a holding that appears to be premised on *Waco* v. *United States Fidelity & Guaranty Co.*, 293 U. S. 140. *Waco*, however, does not permit an appeal when, as here, there is no order separate from the unreviewable remand order. Pp. 10–11.

(e) Petitioner's contention that Congress did not intend §1447(d) to govern suits removed under the FSIA is flatly refuted by this Court's longstanding precedent that "[a]bsent a clear statutory command to

Syllabus

the contrary, [the Court] assume[s] that Congress is 'aware of the universality of th[e] practice' of denying appellate review of remand orders when Congress creates a new ground for removal." *Things Remembered, Inc.* v. *Petrarca*, 516 U. S. 124, 128. Pp. 12–13.

391 F. 3d 1011, vacated in part and remanded.

SCALIA, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, THOMAS, GINSBURG, and ALITO, JJ., joined. KENNEDY, J., filed a concurring opinion, in which ALITO, J., joined. BREYER, J., filed a dissenting opinion, in which STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–85

POWEREX CORP., PETITIONER *v.* RELIANT ENERGY SERVICES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 18, 2007]

JUSTICE SCALIA delivered the opinion of the Court.

We granted certiorari to decide whether, under the Foreign Sovereign Immunities Act of 1976 (FSIA), petitioner is an "organ of a foreign state or political subdivision thereof." 28 U. S. C. §1603(b)(2). When we granted certiorari, however, we asked the parties also to address whether the Ninth Circuit had appellate jurisdiction in light of 28 U. S. C. §1447(d).

I

The procedural history of this case is long and complicated; we recount only what is necessary to resolve the writ before us. The State of California, along with some private and corporate citizens (hereinafter collectively referred to as plaintiffs-respondents), filed suits in California state courts against various companies in the California energy market, alleging that they had conspired to fix prices in violation of California law. Some of those defendants, in turn, filed cross-claims seeking indemnity from, *inter alios*, the Bonneville Power Administration (BPA), the Western Area Power Administration (WAPA), the British Columbia Hydro and Power Authority (BC

Hydro), and petitioner Powerex (we shall sometimes refer to these entities collectively as the cross-defendants). BPA and WAPA are agencies of the United States Government. BC Hydro is a crown corporation of the Canadian Province of British Columbia that is wholly owned by the Province and that all parties agree constitutes a "foreign state" for purposes of the FSIA. See §1603. Petitioner, also a Canadian corporation, is a wholly owned subsidiary of BC Hydro.

The cross-defendants removed the entire case to federal court. BC Hydro and petitioner both relied on §1441(d), which permits a "foreign state," as defined by §1603(a) of the FSIA, to remove civil actions brought against it in state court. BPA and WAPA invoked §1442(a), authorizing removal by federal agencies. Plaintiffs-respondents moved to remand, arguing that petitioner was not a foreign state, and that the cross-claims against BPA, WAPA, and BC Hydro were barred by sovereign immunity. Petitioner opposed remand on the ground that it was a foreign state under the FSIA; the other cross-defendants opposed remand on the ground that their sovereign immunity entitled them to be dismissed from the action outright.

The District Court initially concluded (we assume correctly) that §1442(a) entitled BPA and WAPA to remove the *entire* case and that BC Hydro was similarly entitled under §1441(d). App. to Pet. for Cert. 20a. It thus believed that whether the case should be remanded "hinge[d on its] jurisdictional authority to hear the removed claims, not whether the actions were properly removed in the first instance." *Ibid.* The District Court held that petitioner did not qualify as a foreign sovereign under the FSIA. *Id.*, at 33a–38a. It also decided that BC Hydro enjoyed sovereign immunity under the FSIA. *Id.*, at 21a–33a. And it concluded that BPA and WAPA were immune from suit in state court, which the court believed deprived it of jurisdiction over the claims against those agencies. *Id.*, at 38a–

44a. Having reached these conclusions, the District Court remanded the entire case. *Id.*, at 44a.

Petitioner appealed to the Court of Appeals for the Ninth Circuit, arguing that it was a foreign sovereign under the FSIA. BPA and WAPA (but not BC Hydro) also appealed, asserting that the District Court, before remanding the case, should have dismissed them from the action in light of their sovereign immunity. Plaintiffs-respondents, for their part, rejoined that both appeals were jurisdictionally barred by §1447(d) and that the District Court had not erred in any event. The Ninth Circuit rejected the invocation of §1447(d), holding that that provision did not preclude it from reviewing substantive issues of law that preceded the remand order. *California* v. *NRG Energy Inc.*, 391 F. 3d 1011, 1022–1023 (2004). It also found that the District Court had jurisdiction over the case because BPA, WAPA, and BC Hydro properly removed the entire action. *Id.*, at 1023. Turning to the merits, the Ninth Circuit affirmed the holding that petitioner was not a "foreign state" for purposes of the FSIA. *Id.*, at 1025–1026. It also upheld the District Court's conclusion that BPA, WAPA, and BC Hydro retained sovereign immunity, *id.*, at 1023–1025, but reversed its decision not to dismiss BPA and WAPA before remanding, *id.*, at 1026–1027.

Petitioner sought certiorari review of the Ninth Circuit's determination that it was not an "organ of a foreign state or political subdivision thereof" under §1603(b)(2). We granted certiorari on this question, but asked the parties to address in addition whether the Ninth Circuit had jurisdiction over petitioner's appeal notwithstanding §1447(d). 549 U. S. ____ (2007).

II

The authority of appellate courts to review district-court orders remanding removed cases to state court is substan-

tially limited by statute. Title 28 U. S. C. §1447(d) provides (with an exception for certain civil rights cases) that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Determining whether the Ninth Circuit was permitted to review the District Court's remand is, alas, not as easy as one would expect from a mere reading of this text, for we have interpreted §1447(d) to cover less than its words alone suggest. In *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336, 345–346 (1976), we held that §1447(d) should be read *in pari materia* with §1447(c), so that only remands based on the grounds specified in the latter are shielded by the bar on review mandated by the former. At the time of *Thermtron*, §1447(c) stated in relevant part:

> "'If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case.'" *Id.*, at 342.

Consequently, *Thermtron* limited §1447(d)'s application to such remands. *Id.,* at 346. In 1988, Congress amended §1447(c) in relevant part as follows:

> "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under [28 U. S. C. §]1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." §1016(c)(1), 102 Stat. 4670.

When that version of §1447(c) was in effect, we thus interpreted §1447(d) to preclude review only of remands for lack of subject-matter jurisdiction and for defects in removal procedure. See *Quackenbush* v. *Allstate Ins. Co.*, 517 U. S. 706, 711–712 (1996); *Things Remembered, Inc.* v.

*Petrarca*, 516 U. S. 124, 127–128 (1995).

Although §1447(c) was amended yet again in 1996, 110 Stat. 3022, we will assume for purposes of this case that the amendment was immaterial to *Thermtron*'s gloss on §1447(d), so that the prohibition on appellate review remains limited to remands based on the grounds specified in *Quackenbush*. We agree with petitioner that the remand order was not based on a defect in removal procedure, so on the foregoing interpretation of *Thermtron* the remand is immunized from review only if it was based on a lack of subject-matter jurisdiction.

## A

The principal submission of the Solicitor General and petitioner is that the District Court's remand order was not based on a lack of "subject matter jurisdiction" within the meaning of §1447(c) because that term is properly interpreted to cover *only* "a defect in subject matter jurisdiction *at the time of removal* that rendered *the removal itself* jurisdictionally improper." Brief for United States as *Amicus Curiae* 8; see also *id.*, at 8–11; Brief for Petitioner 42–45. Under this interpretation, the District Court's remand order was not based on a defect in subject-matter jurisdiction for purposes of §1447(c), since the cross-defendants other than petitioner were statutorily authorized to remove the whole case in light of their sovereign status. The Ninth Circuit appears to have relied, at least in part, on this rationale. See 391 F. 3d, at 1023.

We reject this narrowing construction of §1447(c)'s unqualified authorization of remands for lack of "subject matter jurisdiction." Nothing in the text of §1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance. Petitioner and the Solicitor General do not seriously dispute the absence of an explicit textual limitation. Instead, relying on the

statutory history of §1447(c), they make a three-step argument why the provision is implicitly limited in this manner. First, they note that the pre-1988 version of §1447(c) mandated remand "[i]f at any time before final judgment it appear[ed] that the case was removed improvidently and without jurisdiction," 28 U. S. C. §1447(c) (1982 ed.). That version, obviously, authorized remand only for cases that were *removed* improperly. Second, they contend that the purpose of the 1988 amendment was to impose a time limit for raising nonjurisdictional objections to removal, a contention that is certainly plausible in light of the structure of the amended provision:

> "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." §1447(c) (1988 ed.).

Finally, they conclude that since the purpose of the amendment was to alter the timing rules, there is no reason to think that Congress broadened the scope of §1447(c) to authorize the remand of cases that had been properly removed. The language "lacks subject matter jurisdiction," which was newly added to §1447(c), must be construed to cover only cases in which *removal* was jurisdictionally improper at the outset.

But the very statutory history upon which this creative argument relies conclusively refutes it. The same section of the public law that amended §1447(c) to include the phrase "subject matter jurisdiction" also created a new §1447(e). See §1016(c), 102 Stat. 4670. Section 1447(e), which remains on the books, states:

> "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject mat-

ter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

This unambiguously demonstrates that a case can be properly removed and yet suffer from a failing in *subject-matter jurisdiction* that requires remand. A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning. See, *e.g., IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005). That maxim is doubly appropriate here, since the phrase "subject matter jurisdiction" was inserted into §1447(c) and §1447(e) at the same time. There is no reason to believe that the new language in the former provision, unlike the new language simultaneously inserted two subsections later, covers *only* cases in which removal itself was jurisdictionally improper. We hold that when a district court remands a properly removed case because it nonetheless lacks subject-matter jurisdiction, the remand is covered by §1447(c) and thus shielded from review by §1447(d).[1]

B

That holding requires us to determine whether the ground for the District Court's remand in the present case was lack of subject-matter jurisdiction. As an initial matter, it is quite clear that the District Court was *purporting* to remand on that ground. The heading of the discussion section of the remand order is entitled "Subject

---

[1] To be clear, we do not suggest that the question whether removal is proper is *always* different from the question whether the district court has subject-matter jurisdiction, for the two are often identical in light of the general rule that postremoval events do not deprive federal courts of subject-matter jurisdiction. See, *e.g., Wisconsin Dept. of Corrections* v. *Schacht*, 524 U. S. 381, 391 (1998). We merely hold that when there is a divergence, such that a district court lacks subject-matter jurisdiction to hear a claim that was properly removed, the consequent remand is authorized by §1447(c) and appellate review is barred by §1447(d).

Matter Jurisdiction Over the Removed Actions." App. to Pet. for Cert. 20a. And the District Court explicitly stated that the remand "issue hinges . . . on the Court's jurisdictional authority to hear the removed claims." *Ibid.* Were any doubt remaining, it is surely eliminated by the District Court's order denying a stay of the remand, which repeatedly stated that a lack of subject-matter jurisdiction required remand pursuant to §1447(c). See App. 281–286.

For some Members of this Court, the foregoing conclusion that the District Court purported to remand for lack of subject-matter jurisdiction is alone enough to bar review under §1447(d). See *Osborn* v. *Haley*, 549 U. S. ___, ___ (2007) (slip op., at 2–3) (SCALIA, J., joined by THOMAS, J., dissenting). Even assuming, however, that §1447(d) permits appellate courts to look behind the district court's characterization, see *Kircher* v. *Putnam Funds Trust*, 547 U. S. ___, ___, n. 9 (2006) (slip op., at 7, n. 9) (reserving the question), we conclude that appellate review is barred in this case.[2] There is only one *plausible* explanation of what legal ground the District Court actually relied upon for its remand in the present case. As contended by plaintiffs-respondents, it was the court's lack of *power* to adjudicate the claims against petitioner once it concluded both that petitioner was not a foreign state capable of independently removing and that the claims against the other removing cross-defendants were barred by sovereign immunity. Brief for Plaintiffs-Respondents 17–21, 25–26. Though we have not passed on the question whether, when sovereign immunity bars the claims against the only parties capable

—————————

[2] The Court's opinion in *Osborn* v. *Haley*, 549 U. S. ___ (2007), had nothing to say about the scope of review that is permissible under §1447(d), since it held that §1447(d) was displaced in its entirety by 28 U. S. C. §2679(d)(2). See 549 U. S., at ___ (slip op., at 15–16) (reasoning that, of the two forum-determining provisions—§1447(d), the generally applicable section, and §2679(d)(2), a special prescription governing Westfall Act cases—"only one can prevail").

of removing the case, subject-matter jurisdiction exists to entertain the remaining claims, cf. n. 3, *infra,* the point is certainly debatable. And we conclude that review of the District Court's characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at all, should be limited to confirming that that characterization was colorable. Lengthy appellate disputes about whether an arguable jurisdictional ground invoked by the district court was properly such would frustrate the purpose of §1447(d) quite as much as determining whether the factfinding underlying that invocation was correct. See *Kircher, supra,* at ___ (slip op., at 2–3) (SCALIA, J., concurring in part and concurring in judgment). Moreover, the line between misclassifying a ground as subject-matter jurisdiction and misapplying a proper ground of subject-matter jurisdiction is sometimes elusively thin. To decide the present case, we need not pass on whether §1447(d) permits appellate review of a district-court remand order that dresses in jurisdictional clothing a patently nonjurisdictional ground (such as the docket congestion invoked by the District Court in *Thermtron*, 423 U. S., at 344). We hold that when, as here, the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by §1447(d).

Petitioner puts forward another explanation for the remand, which we find implausible. Petitioner claims that, because the entire case was properly removed, the District Court had the discretion to invoke a form of *supplemental jurisdiction* to hear the claims against it, and that its remand rested upon the decision not to exercise that discretion. In short, petitioner contends that the District Court was actually relying on *Carnegie-Mellon Univ.* v. *Cohill*, 484 U. S. 343, 357 (1988), which authorized district courts to remand removed state claims when they decide not to exercise supplemental jurisdiction.

Brief for Petitioner 45–48; Reply Brief for Petitioner 16–20.  It is far from clear, to begin with, (1) that supplemental jurisdiction was even available in the circumstances of this case;[3] and (2) that when discretionary supplemental jurisdiction is declined the remand is not based on lack of subject-matter jurisdiction for purposes of §1447(c) and §1447(d).[4]  Assuming those points, however, there is no reason to believe that the District Court's remand was actually based on this unexplained discretionary decision. The District Court itself *never mentioned* the possibility of supplemental jurisdiction, neither in its original decision, see App. to Pet. for Cert. 20–44, nor in its order denying petitioner's motion to stay the remand pending appeal, App. 281–286.  To the contrary, as described above, it relied upon lack of subject-matter jurisdiction—which, in petitioner's view of things (but see n. 4, this page) would not include a *Cohill* remand.  Moreover, it does not appear from the record that petitioner ever even argued to the District Court that supplemental jurisdiction was a basis for retaining the claims against it.  There is, in short, no reason to believe that an unmentioned nonexercise of *Cohill* discretion was the basis for the remand.

C

Part of the reason why the Ninth Circuit concluded it had appellate jurisdiction is a legal theory quite different

_____

[3] Petitioner provides no authority from this Court supporting the proposition that a district court presiding over a multiparty removed case can invoke supplemental jurisdiction to hear claims against a party that cannot independently remove when the claims against the only parties authorized to remove are barred by *sovereign immunity*.

[4] We have never passed on whether *Cohill* remands are subject-matter jurisdictional for purposes of post-1988 versions of §1447(c) and §1447(d).  See *Things Remembered, Inc.* v. *Petrarca,* 516 U. S. 124, 129–130 (1995) (KENNEDY, J., concurring) (noting that the question is open); cf. *Cohill,* 484 U. S., at 355, n. 11 (discussing the pre-1988 version of §1447(c)).

from those discussed and rejected above. Petitioner, along with the other appellants, convinced the court to apply Circuit precedent holding that §1447(d) does not preclude review of a district court's merits determinations that precede the remand. See 391 F. 3d, at 1023 (citing, *inter alia*, *Pelleport Investors, Inc.* v. *Budco Quality Theatres, Inc.*, 741 F. 2d 273, 276–277 (CA9 1984)). Petitioner has not completely abandoned this argument before us, see Brief for Petitioner 50, and it is in any event desirable to address this aspect of the Ninth Circuit's judgment.

The line of Ninth Circuit jurisprudence upon which petitioner relied appears to be invoking our decision in *Waco* v. *United States Fidelity & Guaranty Co.*, 293 U. S. 140 (1934). There the District Court, in a single decree, had entered one order dismissing a cross-complaint against one party, and another order remanding because there was no diversity of citizenship in light of the dismissal. *Id.*, at 142. We held that appellate jurisdiction existed to review the order of dismissal, although we repeatedly cautioned that the remand order itself could not be set aside. *Id.*, at 143–144. The Ninth Circuit's application of *Waco* to petitioner's appeal was mistaken. As we reiterated in *Kircher*, see 547 U. S., at \_\_\_, n. 13 (slip op., at 11, n. 13), *Waco* does not permit an appeal when there is no *order* separate from the unreviewable remand order. Here petitioner can point to no District Court order, separate from the remand, to which it objects and to which the issue of its foreign sovereign status is material. Thus, petitioner's invocation of *Waco* amounts to a request for one of two impermissible outcomes: an advisory opinion as to its FSIA status that will not affect any order of the District Court, or a reversal of the remand order. *Waco* did not, and could not, authorize either form of judicial relief.

### D

Finally, petitioner contends, with no textual support, that §1447(d) is simply inapplicable to a suit removed under the FSIA. It asserts that "§1447(d) must yield because Congress could not have intended to grant district judges irrevocable authority to decide questions with such sensitive foreign-relations implications." Brief for Petitioner 49. We will not ignore a clear jurisdictional statute in reliance upon supposition of what Congress *really* wanted. See *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992). Petitioner's divination of congressional intent is flatly refuted by longstanding precedent:

> "Section 1447(d) applies 'not only to remand orders made in suits removed under [the general removal statute], but to orders of remand made in cases removed under any other statutes, as well.' . . . Absent a clear statutory command to the contrary, we assume that Congress is 'aware of the universality of th[e] practice' of denying appellate review of remand orders when Congress creates a new ground for removal." *Things Remembered*, 516 U. S., at 128 (quoting *United States* v. *Rice*, 327 U. S. 742, 752 (1946); emphasis deleted and alterations in original).

Congress has repeatedly demonstrated its readiness to exempt particular classes of remand orders from §1447(d) when it wishes—both within the text of §1447(d) itself (which exempts civil rights cases removed pursuant to 28 U. S. C. §1443), and in separate statutes, see, *e.g.,* 12 U. S. C. §1441a(*l*)(3)(c), §1819(b)(2)(C); 25 U. S. C. §487(d).

We are well aware that §1447(d)'s immunization of erroneous remands has undesirable consequences in the FSIA context. A foreign sovereign defendant whose case is wrongly remanded is denied not only the federal forum to which it is entitled (as befalls all remanded parties with meritorious appeals barred by §1447(d)), but also certain

procedural rights that the FSIA specifically provides foreign sovereigns only in federal court (such as the right to a bench trial, see 28 U. S. C. §1330(a); §1441(d)). But whether that special concern outweighs §1447(d)'s general interest in avoiding prolonged litigation on threshold non-merits questions, see *Kircher, supra,* at \_\_\_ (slip op., at 5), is a policy debate that belongs in the halls of Congress, not in the hearing room of this Court. As far as the Third Branch is concerned, what the text of §1447(d) indisputably does prevails over what it ought to have done.[5]

_____

[5] The dissent's belief that there is an implicit FSIA exception to §1447(d), see *post*, at 1–6 (opinion of BREYER, J.), rests almost exclusively on our recent decision in *Osborn*. The dissent reads *Osborn* to stand for the proposition that any "conflict" between a specific, later-enacted statute and §1447(d) should be resolved in favor of the former. *Post*, at 2–3. The reason why the dissent is forced to the parenthetical admission that "*Osborn* did not say as much," *post*, at 2, is because the dissent drastically overreads the case. *Osborn* held only that §1447(d) was trumped by the Westfall Act's explicit provision that removal was conclusive upon the Attorney General's certification: as between "the two antishuttling commands," the Court said, "only one can prevail." 549 U. S., at \_\_\_ (slip op., at 16). The opinion was quite clear that the *only* statutory rivalry with which it was concerned was dueling "antishuttling commands": "Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way—from state to federal court—does today's decision hold sway." *Ibid.* That is why *Osborn* repeatedly emphasized that Westfall Act certification is "'conclusiv[e] . . . *for purposes of removal,*'" *id.*, at \_\_\_ (slip op., at 13, 14), an emphasis that the dissent essentially ignores, *post*, at 2–3.

*Osborn* is no license for courts to assume the legislative role by characterizing the *consequences* of §1447(d)'s bar on appellate review as creating a *conflict*, leaving it to judges to suppress that provision when they think Congress undervalued or overlooked those consequences. The dissent renders a quintessential policy judgment in concluding that appellate "delay is necessary, indeed, crucial," *post*, at 4, when the rights of a foreign sovereign are at stake. We have no idea whether this is a wise balancing of the various values at issue here. We are confident, however, that the dissent is wrong to think that it would improve the "law in this democracy," *post*, at 6, for judges to accept the lawmaking power that the dissent dangles before them.

\*    \*    \*

Section 1447(d) reflects Congress's longstanding "policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *Rice, supra,* at 751. Appellate courts must take that jurisdictional prescription seriously, however pressing the merits of the appeal might seem. We hold that §1447(d) bars appellate consideration of petitioner's claim that it is a foreign state for purposes of the FSIA. We therefore vacate in part the judgment of the Ninth Circuit and remand the case with instructions to dismiss petitioner's appeal for want of jurisdiction.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–85

_____

POWEREX CORP., PETITIONER *v.* RELIANT ENERGY
SERVICES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 18, 2007]

JUSTICE KENNEDY, with whom JUSTICE ALITO joins,
concurring.

When Congress acted through the Foreign Sovereign
Immunities Act of 1976, 28 U. S. C. §1602 *et seq.* (2000 ed.
and Supp. IV), to codify certain protections and immuni-
ties for foreign sovereigns and the entities of those sover-
eigns, it no doubt considered its action to be of importance
for maintaining a proper relationship with other nations.
And so it is troubling to be required to issue a decision
that might well frustrate a policy of importance to our own
Government.

As the Court explains, however, the structure and word-
ing of §1447(d) (2000 ed.) leave us no other choice. There
is no latitude for us to reach a different result. If it is true
that the statute as written and the judgment we issue
today are inconsistent with the intent and purpose Con-
gress wanted to express, then the immediate jeopardy that
foreign sovereign entities will now face should justify
urgent legislative action to enact the necessary statutory
revisions.

# SUPREME COURT OF THE UNITED STATES

_____

### No. 05–85

_____

## POWEREX CORP., PETITIONER *v.* RELIANT ENERGY SERVICES, INC., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### [June 18, 2007]

JUSTICE BREYER, with whom JUSTICE STEVENS, joins, dissenting.

Unlike the Court, I believe the District Court's remand order is reviewable on appeal. And, reviewing the decision below, I would hold that Powerex is an organ of the Government of British Columbia.

## I

The majority concludes that 28 U. S. C. §1447(d) took from the Ninth Circuit the power to review the District Court's remand decision. The statutory argument is a strong one. Section 1447(c) says that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court; and §1447(d), referring to subsection (c), adds that a district court "order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." *Thermtron Products, Inc.* v. *Hermansdorfer*, 423 U. S. 336, 345–346 (1976).

Nonetheless this Court has found exceptions to §1447's seemingly blanket prohibition. See, *e.g., id.,* at 350–352; *Osborn* v. *Haley*, 549 U. S. \_\_\_, \_\_\_ (2007) (slip op. at 12–16). In doing so, the Court has recognized that even a statute silent on the subject can create an important

conflict with §1447(d)'s "no appellate review" instruction. And where that is so, we have, in fact, resolved the conflict by reading a later more specific statute as creating an implicit exception to §1447(d) (though *Osborn* did not say as much). *Id.,* at___ (slip op., at 15–16).

The subject matter of the Foreign Sovereign Immunity Act of 1976's removal provision, foreign sovereigns, is special. And the FSIA creates serious conflicts with §1447(d)'s "no appellate review" instruction. The FSIA is later enacted and subject-matter specific. Consequently, I would read into the FSIA a similar exception to §1447(d), applicable here.

*Osborn* illustrates my starting point: a conflict with §1447(d). The Westfall Act, the specific statute at issue in that case, provides for removal to federal court of a state-court lawsuit brought against a federal employee where the state-court lawsuit attacks employee actions within the scope of federal employment. 28 U. S. C. §§2679(d)(2)–(3). The Westfall Act authorizes the Attorney General to certify that the employee's actions at issue fall within the scope of federal employment. And the Westfall Act says that the certification "conclusively establish[es]" that fact for removal purposes. §§2679(d)(1)–(2). In *Osborn*, we pointed out that §1447(d) would permit a district court, without appellate review, to remand in the face of a contrary Attorney General certification. 549 U. S., at ___ (slip op., at 14). Doing so, without appellate review, would thereby permit the district court to substitute its own judgment (as to whether the employee's actions were within the federal "scope of employment") for that of the Attorney General. And the district court would thereby have the unreviewable power to make the Attorney General's determination *non*conclusive, contrary to what the statute says. Because §1447(d), if applied, would render this statutory instruction "weightless," we found a conflict with §1447(d). *Ibid.* And we resolved the conflict in favor

of the later enacted, more specific Westfall Act. *Id.*, at ___ (slip op., at 15).

A similarly strong conflict exists here, albeit not with a separate removal provision, but rather with a comprehensive statutory scheme. To understand how that is so, imagine a case not now before us. Imagine that a private plaintiff brings a lawsuit in state court against a noncommercial division of a foreign nation's government, say, a branch of that nation's defense ministry or, for that matter, against the foreign nation itself. The FSIA provides a specific guarantee that such a suit cannot continue (except in certain instances that, for purposes of my example, are not relevant). 28 U. S. C. §§1602–1605. It achieves this objective by authorizing the foreign government to remove the case to federal court where a federal judge will determine if the defendant is indeed a foreign government and, if so, dismiss the case. §1441(d).

What happens if the foreign sovereign removes the case to federal court only to have the federal judge mistakenly remand the case to state court? As in an ordinary case, the lawsuit may well continue in the state tribunal. But, if so, *unlike the ordinary case* (say, a wrongly remanded diversity or "arising under" case) but like *Osborn,* the removing party will have lost considerably more than a choice of forum. The removing party will have lost that which *a different* portion of the special statute sought to provide, namely, the immunity from suit that the FSIA sought to assure.

That assurance forms a separate and central FSIA objective. The very purpose of sovereign immunity is to avoid subjecting a foreign sovereign to the rigors and "inconvenience of suit." *Dole Food Co.* v. *Patrickson,* 538 U. S. 468, 479 (2003). In such a case, a state court likely will feel bound by the federal court's prior judgment on the lack of immunity (under state law-of-the-case doctrine) and this Court's review (of an adverse state-court judg-

ment) will come too late.  In such a case, the FSIA's basic objective (unrelated to choice of forum) will have become "weightless." *Osborn*, *supra*, at ___ (slip op., at 14).

It is difficult to see how this conflict between the FSIA's basic objective and §1447(d) is any less serious than the conflict at issue in *Osborn*.  The statutory objective here, harmonious relations with foreign sovereigns, is more, not less, important. See *Ex parte Peru*, 318 U. S. 578, 587 (1943) (exercising original writ to protect sovereign from erroneous District Court conclusion that it was not immune from suit).  See also, *e.g.*, *Republic of Mexico* v. *Hoffman*, 324 U. S. 30, 35 (1945); *Schooner Exchange* v. *McFaddon*, 7 Cranch 116 (1812); H. R. Rep. No. 94–1487, p. 13 (1976) (hereinafter H. R. Rep.) (FSIA intended to avoid "adverse foreign relations consequences").

Neither is a §1447(d) exception here likely to undermine §1447(d)'s basic purpose: avoiding the procedural delay that an added federal appeal would create.  Avoiding that delay is important in a typical case where only choice of forum is at issue.  But that same delay is necessary, indeed, crucial, in the special case where a foreign sovereign's immunity from suit is at issue.  At the same time, foreign affairs is itself an exceptional topic, with special risks, special expertise, and special federal authority; hence, our finding a §1447(d) exception in the FSIA is unlikely to lead courts to create a series of exceptions affecting more typical cases.  See, *e.g.*, *Kircher* v. *Putnam Funds Trust*, 547 U. S. ___, ___ (2006) (slip op., at 5–6) (avoidance of delay is §1447(d)'s basic purpose).

Finally, as in *Osborn,* the FSIA is a specific, later enacted statute. Cf. *Osborn*, *supra,* at ___ (slip op., at 15); see generally *Long Island Care at Home, Ltd.* v. *Coke, ante,* at ___ (slip op., at 10) (where statutory provisions are inconsistent, "normally the specific governs the general"); *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 384–385 (1992); *Simpson* v. *United States*, 435 U. S. 6, 15

(1978).

Taken together, these considerations lead me to believe that, were a foreign *non*commercial government entity's immunity from suit at issue, the FSIA would conflict with §1447(d), leading a court properly to read the FSIA as implicitly creating an exception to §1447(d), and thereby protecting the sovereign's right to appeal a wrongful re-mand order.

The removing defendant in this case, of course, is not a foreign sovereign immune from suit. It is a foreign gov-ernmental entity that acts in a commercial capacity and consequently is subject to suit. 28 U. S. C. §1605(a)(2). But the FSIA nonetheless creates an important, though different, conflict. That conflict arises because a different FSIA provision says, "[u]pon removal the action shall be tried by the court *without jury.*" §1441(d) (emphasis added); see H. R. Rep., at 33 ("[O]ne effect of removing an action under the new section 1441(d) will be to extinguish a demand for a jury trial made in the state court"); S. Rep. No. 94–1310, p. 32 (1976) (hereinafter S. Rep.) (same). A wrongful remand would destroy this statutory right. The state court trial would often proceed *with* a jury; and it is questionable whether even this Court could later set aside an adverse state court judgment for that reason—at least Congress seems to have thought as much. See H. R. Rep., at 33 ("Because the *judicial power of the United States* specifically encompasses actions between a State, or the Citizens thereof, and foreign States, this preemption of State court [jury trial] procedures in cases involving for-eign sovereigns is clearly constitutional" (emphasis added; citations and internal quotation marks omitted)); S. Rep., at 32 (same).

The conflict is important, this case is special, and we should resolve it by reading the FSIA as implicitly pre-empting the general application of §1447(d). Indeed, I do not see how we could read the FSIA differently in this

respect depending upon whether commercial or non-commercial sovereign activity is at issue. For these reasons, I believe that the Ninth Circuit correctly determined that it possessed legal authority to review the case.

It is true, as the majority states, that Congress has in other contexts carved out certain removal orders as being specifically reviewable on appeal. *Ante*, at 12. The majority reads these specific statutes to suggest that had Congress intended §1447(d) not to apply in FSIA cases, it could simply have said so. *Ibid.* However, in fact, for the reasons articulated above, I believe that Congress must have assumed the FSIA overrode §1447. Congress enacted the FSIA soon after the Court's decision in *Thermtron Products,* 423 U. S., at 345, held that implicit §1447(d) exceptions might exist. Cf. *Osborn*, 549 U. S., at ___ (slip op., at 13–15) (despite statutory silence, reading Westfall Act as overriding §1447(d)). And, as I have said, the FSIA would otherwise fail to achieve Congress' basic objectives. Context and purpose make clear that few if any members of Congress could have wanted to block appellate review here. Were the Court to pay greater attention to statutory objectives and purposes and less attention to a technical parsing of language, it might agree. Were it to agree, we would exercise our *interpretive obligation*, not "lawmaking power," *ante*, at 13, n. 5, with increased fidelity to the intention of those to whom our Constitution delegates that lawmaking power, namely the Congress of the United States. And, law in this democracy would be all the better for it.

## II

I part company with the Ninth Circuit on the merits. The Circuit held that the District Court's remand was proper because, in its view, Powerex is not *"an organ of a . . . political subdivision"* of a "foreign state." 28 U. S. C.

§1603(b)(2) (emphasis added). Hence, it is not an "agency or instrumentality" of a foreign government and falls outside the scope of the FSIA's provision authorizing removal. §1603(a); see generally *California* v. *NRG Energy Inc.,* 391 F. 3d 1011, 1025–1026 (2004).

In my view, however, Powerex is "an organ" of the Province of British Columbia, a "political subdivision" of Canada. The record makes clear that Powerex is a government-owned and government-operated electric power distribution company, not meaningfully different from ordinary municipal electricity distributors, the Tennessee Valley Authority, or any foreign "nationalized" power producers and distributors, such as Britain's former Central Electricity Generating Board or Electricité de France. See generally C. Harris, Electricity Markets: Pricing, Structures, and Economics 15–20 (2006) (summarizing features of electricity companies in United States and Europe, among others); J. Nelson, Marginal Cost Pricing in Practice 3–6, 32, 37 (1964) (summarizing features of France hydropower industry). See also http://tva.com/abouttva/index.htm (summarizing general features of Tennessee Valley Authority) (all Internet materials as visited June 8, 2007, and available in Clerk of Court's case file); Government Corporation Control Act, §101, 59 Stat. 597–598 (describing Tennessee Valley Authority as "'wholly owned Government Corporation'"); *Lebron* v. *National Railroad Passenger Corporation*, 513 U. S. 374, 388–389 (1995) (noting that corporate entities in Government Corporation Control Act were incorporated by other government-owned corporations); Dept. of Labor, Bureau of Labor Statistics, Career Guide to Industries, Utilities, online at http://www.bls.gov/oco/cg/cgs018.htm (describing features of public run utilities); G. Rothwell & T. Gómez, Electricity Economics: Regulation and Deregulation 129–241 (2003) (comparing electricity markets and industries in California and various foreign nations).

Powerex is itself owned and operated by BC Hydro, an entity that all apparently concede is governmental in nature. Brief for Respondents 38–40, 42. British Columbia's statutes create BC Hydro as a kind of government agency to produce water-generated electric power. Power Measures Act, S. B. C., ch. 40 (1964); App. to Pet. for Cert. 52a, 118a, 163a–169a. BC Hydro has a board of directors, all of whom are appointed by British Columbia's government. *Id.,* at 58a–59a. It is an "agent of the [provincial] government and its powers may be exercised only as an agent of the government." Hydro Power Authority Act, R. S. B. C. ch. 212, §3(1) (1996). The District Court concluded that BC Hydro is, in fact, a foreign sovereign entity entitled to immunity. 391 F. 3d, at 1024.

British Columbia's Minister of Energy issued a written directive ordering that BC Hydro create a subsidiary, Powerex, to carry out the specialized tasks of exporting hydro-generated electric power and of importing power, which it is then to distribute to British Columbia residents. App. 235–239, 250–251, 267. Powerex specifically carries out these obligations in accordance with various treaties between Canada and the United States. App. 133–155; App. to Pet. for Cert. 55a; see Treaty Between the United States of America and Canada Relating to Cooperative Development of the Water Resources of the Columbia River Basin, Jan. 17, 1961, [1964] 15 U. S. T. 1555, T.I.A.S. No. 5638, App. to Pet. for Cert. 61a–82a; Treaty Between Canada and the United States of America Relating to the Skagit River and Ross Lake, and the Seven Mile Reservoir on the Pend d'Oreille River, Apr. 2, 1984, 1469 U. N. T. S. 309, T.I.A.S. No. 11088, App. to Pet. for Cert. 138a–145a); British Columbia-Seattle Agreement (Mar. 30, 1984), App. 160–171.

Powerex's board members consist of some of BC Hydro's board members and other members whom those members appoint. App. 233–235. The government's comptroller

general reviews Powerex's financial operations and regulates the terms under which it conducts business. Financial Administration Act, R. S. B. C., ch. 138, §§4.1, 8(2)(c)(i), 75, 79.3 (1996) (FAA), Addendum to Brief for Petitioner 34–36, 40–42 (hereinafter Addendum). British Columbia's fiscal control statute refers to Powerex as a "'government body.'" FAA §1, Addendum 31, 33. And other British Columbia laws refer to its employees as "'public office holders.'" Lobbyists Registration Act, S. B. C., ch. 42, §1 (2001), Addendum 50. Powerex pays no income taxes. See Income Tax Act, R. S. C., ch. 1, §§149(1)(d), (d.2) (5th Supp., 1985), Addendum 45; App. to Pet. for Cert. 58a; Brief for Petitioner 31. The British Columbian government, through BC Hydro, has sole beneficial ownership and control of Powerex. App. 267. If Powerex earns a profit, that profit must be rebated directly or indirectly to British Columbia's residents. App. 215, 238. I can find no significant difference between Powerex and the classical government entities to which I previously referred. *Supra*, at \_\_\_.

The Ninth Circuit noted that Powerex may earn a profit and that the Government of British Columbia does not provide financial support. And the Ninth Circuit thought these facts made a critical difference. But a well-run nationalized firm *should* make a reasonable profit; nor should it have to borrow from the government itself. See, *e.g.*, Nelson, *supra,* at 8–12; Harris, Electricity Markets, at 125, 130–132; Rothwell & Gómez, *supra,* at 3–4. The relevant question is not *whether* Powerex earns a profit but where does that profit go? Here it does not go to private shareholders; it goes to the benefit of the public in payments to the province and reduced electricity prices. App. 215, 238.

The Ninth Circuit also pointed out that certain provincial regulations that apply to other governmental departments do not apply to Powerex. That fact proves little.

The Tennessee Valley Authority, which is "perhaps the best known of the American public corporations," *First Nat. City Bank* v. *Banco Para el Comercio Exterior de Cuba*, 462 U. S. 611, 625, n. 15 (1983), is not subject to certain federal regulations regarding hiring that apply to other governmental departments. See, *e.g.*, 16 U. S. C. §831b.

In sum, Powerex is the kind of government entity that Congress had in mind when it wrote the FSIA's "commercial activit[y]" provisions. See generally 28 U. S. C. §1602 *et seq.;* H. R. Rep., at 15; S. Rep., at 14; *Banco, supra,* at 624–625.

For these reasons, I believe we should consider, and reverse, the Ninth Circuit's determination. With respect, I dissent.