**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CURTISS WILSON,
        *Plaintiff-Appellant*,

v.

HORTON'S TOWING, a Washington corporation; UNITED STATES OF AMERICA,
        *Defendants-Appellees.*

No. 16-35320

D.C. No.
2:15-cv-00629-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted June 11, 2018
Seattle, Washington

Filed October 9, 2018

Before: Dorothy W. Nelson and Paul J. Watford, Circuit Judges, and Dean D. Pregerson,* District Judge.

Opinion by Judge Pregerson

---

* The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

# SUMMARY[**]

## Tribal Jurisdiction / Westfall Act

In an action challenging the civil forfeiture of plaintiff's truck that was seized by a police officer of the Lummi Indian Tribe, the panel affirmed the district court's order entering summary judgment against plaintiff on his conversion claim, but vacated the judgment of dismissal and remanded with instructions to dismiss the action without prejudice to refiling after plaintiff exhausts the appropriate remedies.

After leaving a casino on the Lummi Indian Reservation, Wilson was driving on a Washington state road crossing through the Lummi Indian Reservation when he was stopped by a Lummi tribal police officer who suspected that Wilson was driving while intoxicated. After a search of the truck revealed marijuana, the truck was seized and the Lummi Tribal Court issued a notice of civil forfeiture.

The panel agreed with the district court's ultimate conclusion that tribal jurisdiction was colorable in this case, but for a different reason than that given by the district court. The panel held that although Wilson was stopped on a state road, one could logically conclude that the forfeiture was a response to his unlawful possession of marijuana while on tribal land. The panel further held that the events giving rise to the conversion claim revealed a direct connection to tribal lands, and provided at least a colorable basis for the tribe's jurisdiction over the dispute. The panel affirmed the district

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court's decision to dismiss the case for comity reasons. The panel held that the Lummi Tribal Court must be given the opportunity to first address the question of whether tribal jurisdiction exists.

The panel held that the district court properly substituted the United States as a party for the tribal police officer pursuant to the Westfall Act. The panel employed the two-step test, delineated in *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1006 (9th Cir. 2014), for determining whether a tribal employee could be deemed a federal Bureau of Indian Affairs employee for the purposes of Federal Tort Claims Act liability. The panel held that under both prongs of *Shirk*'s analysis, Wilson had not rebutted the presumptions created by the Attorney General's certification that the officer was acting within the scope of his employment for the United States government at the time of the incident.

The panel held that the district court erred by dismissing the entire action with prejudice because Wilson can potentially renew his claims in federal court after the appropriate remedies have been exhausted.

## COUNSEL

William Joseph Johnston (argued), Bellingham, Washington, for Plaintiff-Appellant.

Robert W. Novasky (argued), Forsberg & Umlauf P.S., Tacoma, Washington, for Defendants-Appellees.

Teal Luthy Miller (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United

States Attorney's Office, Seattle, Washington; for Defendants-Appellees.

## OPINION

PREGERSON, District Judge:

This appeal concerns the seizure of Plaintiff Curtiss Wilson's truck by Brandon Gates, a police officer of the Lummi Indian Tribe. After visiting a casino on the Lummi reservation, Wilson was stopped by Lummi police and found with marijuana in his truck. Citing a violation of tribal drug laws, the Lummi Tribe issued a notice of civil forfeiture and took possession of Wilson's truck.

Wilson sued Officer Gates, who had served the forfeiture notice, and Horton's Towing, the towing company that had released the car to Officer Gates. The district court then substituted the United States as a defendant for Officer Gates pursuant to the Westfall Act, 28 U.S.C. § 2679(d).

At the summary judgment phase, Wilson's sole remaining claim was one for conversion against Horton's Towing and the United States (collectively, "Defendants"). The district court entered summary judgment against Wilson and dismissed the action with prejudice. It held that Wilson had failed to exhaust his tribal remedies against Horton's Towing, and that Wilson had also failed to exhaust his administrative remedies against the United States.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's order entering summary judgment. However, we vacate the judgment of dismissal and remand with instructions to dismiss this action without prejudice to

refiling after Plaintiff has exhausted the appropriate remedies.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2014, Plaintiff Curtiss Wilson drove his 1999 Dodge Ram pickup to a casino located on the Lummi Indian Reservation.[1] After drinking at the casino, Wilson travelled onto a Washington state road crossing through the reservation. Wilson was stopped on this road by Grant Assink, a Lummi tribal police officer, who suspected that Wilson was driving while intoxicated.[2]

Officer Assink searched Wilson's pickup truck and found several containers of marijuana inside. Officer Assink then alerted the Washington State Patrol, who arrested Wilson for driving under the influence. At the direction of the Washington State Patrol, Horton's Towing impounded the truck and towed it off the reservation.

The next day, the Lummi Tribal Court issued a "Notice of Seizure and Intent to Institute Forfeiture." The notice cited Section 5.09A.110(d)(2) of the Lummi Nation Code of Laws, which prohibits the possession of marijuana over one ounce, as the grounds for civil forfeiture. Lummi Tribal Police Officer Brandon Gates presented Horton's Towing

---

[1] Plaintiff is not a member of the Lummi Tribe, which is a federally recognized Indian tribe. *See Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 81 Fed. Reg. 5021 (Jan. 29, 2016).

[2] Although the district court's order and Plaintiff's brief refer to Officer Assink as "Grant Austick," the underlying documents in this case, including the Notice of Seizure, all name him as "Grant Assink."

with the forfeiture notice, and Horton's Towing released the truck to Officer Gates.

On the basis of these events, Plaintiff brought suit against Horton's Towing and Officer Brandon Gates. After the filing of a certification by the Attorney General, the district court substituted the United States as a party for Officer Gates pursuant to the Westfall Act, 28 U.S.C. § 2679(d).

Subsequently, Defendants filed motions for summary judgment. The district court entered summary judgment in Defendants' favor. It held that principles of comity required Wilson to exhaust his tribal remedies against Horton's Towing. It also held that Wilson had failed to exhaust his administrative remedies against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a).

Plaintiff timely appealed. *See* Fed. R. App. P. 4(a)(1).

## STANDARD OF REVIEW

We review *de novo* a district court's decision to grant summary judgment. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001).

## ANALYSIS

This appeal turns on two separate determinations of the district court. The first concerns its decision to dismiss Wilson's case against Horton's Towing for failure to exhaust tribal remedies. The second concerns the district court's decision to substitute the United States for Officer Gates as a party defendant, pursuant to the Westfall Act, 28 U.S.C. § 2679(d).

We address each issue in turn.

## A. Exhaustion of Tribal Remedies against Horton's Towing

"Principles of comity require federal courts to dismiss or to abstain from deciding claims over which tribal court jurisdiction is colorable, provided that there is no evidence of bad faith or harassment." *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 920 (9th Cir. 2008) (quotations omitted). If tribal jurisdiction is "colorable" or "plausible," a plaintiff must first exhaust any remedies before the tribal court. *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008). This exhaustion requirement provides "the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge."[3] *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985).

Applying this exhaustion of remedies requirement, the district court concluded that principles of comity warranted the dismissal of Wilson's conversion claim against Horton's Towing. The district court ruled that tribal jurisdiction was colorable because "the transactions forming the basis of Plaintiff's case" happened or began on tribal lands. Specifically, the district court found that the stretch of state

---

[3] In addition to situations where tribal jurisdiction is plainly lacking, the exhaustion requirement is excused when the defendant asserts tribal jurisdiction in bad faith; when exhaustion would be futile; or when tribal jurisdiction is barred by "express jurisdictional prohibitions." *Nevada v. Hicks*, 533 U.S. 353, 369 (2001). Plaintiff argues that the bad faith exception has been triggered. However, because this argument was made below but not raised in Plaintiff's opening brief, we deem it waived. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

road upon which Plaintiff was arrested was tribal land, and therefore subject to the tribe's civil jurisdiction.

We agree with the district court's ultimate conclusion that tribal jurisdiction is colorable in this case. For the reasons discussed below, however, we part ways with the district court on why tribal jurisdiction is colorable and whether the state road is properly deemed tribal land.

### 1.   A Tribe's Civil Jurisdiction over Non-Members

Broadly speaking, a tribe's source of authority may stem from statutory and treaty rights or, as relevant here, a tribe's "inherent sovereignty." *Montana v. United States*, 450 U.S. 544, 563 (1981). The foundational case on the scope of a tribe's inherent sovereign authority is *Montana v. United States*, 450 U.S. 544 (1981). *Montana* voiced the "general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers." [4] *Id*. at 565.

Subsequent decisions have clarified that *Montana*'s rule "ordinarily applies only to non-Indian land."[5] *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 813 (9th Cir. 2011). "[T]ribes retain considerable control

---

[4] *Montana* addressed the scope of a tribe's civil jurisdiction over nonmembers. *See Strate v. A-1 Contractors*, 520 U.S. 438, 445 (1997). Separately, in the criminal context, the Supreme Court has held that tribes have no jurisdiction over non-Indians. *See Oliphant v. Suquamish Tribe*, 435 U.S. 191, 195 (1978).

[5] That is, in the absence of the competing state interests at issue in *Nevada v. Hicks*, 533 U.S. 353 (2001), tribes generally maintain civil adjudicative authority over non-members on tribal land. *See Window Rock Unified Sch. Dist. v. Reeves*, 861 F.3d 894, 898–99 (9th Cir. 2017), *as amended* (Aug. 3, 2017), *cert. denied*, 138 S. Ct. 648 (2018).

over nonmember conduct on tribal land." *Strate v. A-1 Contractors*, 520 U.S. 438, 454 (1997). The question of "whether tribal courts may exercise jurisdiction over a nonmember defendant may turn on how the claims are related to tribal lands." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1132 (9th Cir. 2006) (en banc). For this reason, land status is often dispositive of the issue of a tribe's civil jurisdiction over non-members. *See Nevada v. Hicks*, 533 U.S. 353, 360 (2001).

On tribal lands, a tribe generally retains the inherent sovereign "right to exclude," together with regulatory and adjudicative authority that flows from that right. *Window Rock Unified Sch. Dist. v. Reeves*, 861 F.3d 894, 898, 899 (9th Cir. 2017), *as amended* (Aug. 3, 2017), *cert. denied*, 138 S. Ct. 648 (2018).

Off tribal lands, however, a tribe generally lacks such authority unless one of the two exceptions set forth in *Montana* applies. *Id.* at 898. First, a tribe may exercise control over "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Montana*, 450 U.S. at 565. Second, a tribe may "exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

Although *Montana* does not address the issue of exhaustion of tribal remedies, its reasoning informs our inquiry into whether tribal jurisdiction is colorable. Specifically, when "it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule," then "it will be equally

evident that tribal courts lack adjudicatory authority over disputes arising from such conduct." *Strate*, 520 U.S. at 459 n.14. Under these circumstances, the exhaustion requirement "must give way, for it would serve no purpose other than delay." *Id*.

In this case, the threshold question is whether Plaintiff's claim "bears some direct connection to tribal lands," such that tribal jurisdiction is colorable. *Smith*, 434 F.3d at 1135. Our inquiry is not narrowly focused on "deciding precisely when and where the claim arose." *Id.* Rather, we must examine "how the claims are related to tribal lands." *Id*. at 1132. Tribal jurisdiction is colorable, for example, when the events that "form the bases for [Plaintiff's] claims occurred or were commenced on tribal territory." *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1416 (9th Cir. 1986).

If Plaintiff's claim is directly tied to events that occurred on tribal land, then tribal jurisdiction is colorable and the exhaustion of tribal remedies is required. Conversely, if those events did not take place on tribal land, we must ask whether either of *Montana*'s two exceptions could confer an alternative basis for tribal jurisdiction.

## 2.   Whether Tribal Civil Jurisdiction Is Colorable

In granting summary judgment, the district court reasoned that tribal jurisdiction over Plaintiff's claim was colorable because the Washington state road on which the traffic stop occurred was tribal land.

Under similar circumstances, the Supreme Court has deemed a state highway running through a reservation to be "alienated, non-Indian" land. *Strate*, 520 U.S. at 454. In *Strate*, it was the tribe's right to "exercise dominion or

control over the right-of-way" that determined the status of the land.**[6]** *Id*. at 455; *see McDonald v. Means*, 309 F.3d 530, 538 (9th 2002).

The district court did not properly consider the factors articulated in *Strate* when it concluded that the state road was tribal land. However, we need not decide, on this record, whether the roadway is tribal land. That is because jurisdiction is colorable for other reasons. Specifically, Wilson's conversion claim may still "bear[] some direct connection to" his conduct on tribal lands. *Smith*, 434 F.3d at 1135.

Immediately after leaving the casino, Wilson was found with several containers of marijuana in his truck. Lummi law prohibits the possession of over one ounce of marijuana, and makes the vehicle used to transport this contraband the target of civil forfeiture. Although Wilson was stopped on the state road, one could logically conclude that the forfeiture was a response to his unlawful possession of marijuana while on tribal land. So interpreted, the events giving rise to the conversion claim reveal a "direct connection to tribal lands,"

---

**[6]** The *Strate* Court acknowledged that it did not question a tribe's authority to "patrol roads within a reservation, including rights-of-way made part of a state highway, and to detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law." 520 U.S. at 456 n.11. Thus, a tribe's authority to patrol state highways on reservation lands does not mean that events occurring on those highways necessarily take place on tribal land, and are subject to a tribe's civil jurisdiction.

*id*., and provide at least a colorable basis for the tribe's civil jurisdiction over the dispute.**[7]**

Therefore, we affirm the district court's decision to dismiss the case for comity reasons, but we do so for reasons different from the ones that the court had articulated. *See Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp*., 159 F.3d 412, 418 (9th Cir. 1998) ("If the decision below is correct, it must be affirmed, even if the district court relied on the wrong grounds or wrong reasoning.").

Our holding leaves open the question of whether the Lummi Tribal Court has civil jurisdiction over Plaintiff's action. Plaintiff, in his briefing, conflates the issue of jurisdiction with the issue of exhaustion. But we need not reach the ultimate issue of whether tribal jurisdiction exists before resolving the threshold question of whether exhaustion is required because tribal jurisdiction is colorable. We therefore conclude that, because tribal jurisdiction is colorable here, the Lummi Tribal Court must be given an opportunity to address the jurisdictional question first. *See Nat'l Farmers Union Ins. Companies*, 471 U.S. at 856.

---

**[7]** Plaintiff argues that the focus of his conversion claim is the seizure of the truck itself, which took place off tribal lands. However, "[o]ur inquiry is not limited to deciding precisely when and where the claim arose, a concept more appropriate to determining when the statute of limitations runs or to choice-of-law analysis." *Smith*, 434 F.3d at 1135. Furthermore, the conversion claim involves a determination of whether the seizure was made with "lawful justification." *W. Farm Serv., Inc. v. Olsen*, 151 Wash. 2d 645, 648 n.1 (2004) (en banc). This determination may implicate Plaintiff's prior conduct on tribal lands.

## B. The Substitution of the United States for Officer Gates

Next, Wilson challenges the district court's decision to substitute the United States as a party for Officer Gates, the Lummi tribal police officer who executed the forfeiture. Under the Westfall Act, 28 U.S.C. § 2679(d), the Attorney General may certify that a "defendant employee was acting within the scope of his office or employment [for the United States government] at the time of the incident out of which the claim arose." [8] *Id*. § 2679(d)(1). In such cases, the action "shall be deemed an action against the United States," and "the United States shall be substituted as the party defendant." *Id*.

The substitution leads, in effect, to "a single avenue of recovery" against the United States under the Federal Tort Claims Act. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993). In this manner, the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007).

This process, however, does not leave a plaintiff without recourse. Rather, the Attorney General's certification is "prima facie evidence that a federal employee was acting within the scope of her employment at the time of the incident," and shifts the burden to the plaintiff to "disprov[e] the Attorney General's certification by a preponderance of

---

[8] This Act, officially the Federal Employees Liability Reform and Tort Compensation Act of 1988, is commonly referred to as the Westfall Act. *See Osborn v. Haley*, 549 U.S. 225, 229 (2007).

the evidence." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995).

Under the circumstances presented here, where the United States is substituted for an employee *and* where that employee is a tribal employee, there is an additional step. The tribal employee must also be deemed to have acted as a federal employee in carrying out the allegedly tortious activity.

In *Shirk*, we delineated a two-step test for determining whether a tribal employee can be deemed a federal Bureau of Indian Affairs ("BIA") employee for the purposes of FTCA liability. *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1006 (9th Cir. 2014). Although *Shirk* did not involve a certification challenge, the parties do not dispute, and consistency favors, the application of *Shirk*'s two-step analysis to the present case.

In general, tribal employees may be deemed to be acting as federal BIA employees when they carry out certain agreements between a tribe and the federal government. *Id*. at 1002–03. The Indian Self-Determination and Education Assistance Act ("ISDEAA") provides for the creation of agreements, commonly known as "638 contracts," whereby tribes may administer programs formerly provided by the BIA. *Id.* at 1002. Following ISDEAA's enactment, Congress extended FTCA liability to tribal employees acting under a "638 contract," or any other federal agreement authorized under ISDEAA. *See* Department of Interior and Related Agencies Appropriation Act, Pub. L. 101-512, § 314, 104 Stat. 1915 (1990)). In these situations, tribal employees "are deemed employees of the Bureau [of Indian Affairs] . . . while acting within the scope of their employment in carrying out the contract or agreement." *Id.* at 1960.

Parsing this language, *Shirk* held that, to be considered BIA employees, tribal employees must act "within the scope of their employment where the relevant 'employment' is 'carrying out the contract or agreement.'" 773 F.3d at 1008 n.6. *Shirk* distills the analysis into two parts. *Id.* at 1006. First, does the language of the federal contract "encompass the activity that the plaintiff ascribes to the employee"? *Id.* at 1007. Second, did the employee's activity fall "within the scope of employment"? *Id.* A tribal employee is only deemed a federal employee if, "while executing his contractual obligations under the relevant federal contract, his allegedly tortious conduct falls within the scope of employment as defined by state law." *Id.* at 1005.

In this case, the Attorney General's certification contained two representations. First, the Attorney General represented that Officer Gates had acted "within the course and scope of a Compact of Self-Governance with the United States" adopted by the Lummi Tribe. Secondly, the Attorney General maintained that Officer Gates had acted "within the scope of his employment in carrying out the Compact."[9] The Attorney General's certification having issued, the burden then shifted to Plaintiff to rebut the government's representations with evidence. As the district court properly concluded, Plaintiff failed to meet this burden.

---

[9] The Attorney General's certification creates a presumption that the challenged activity falls within the scope of the individual's employment. *See, e.g.*, *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017); *see also* 28 U.S.C. § 2679(d). In this case, we find it appropriate that the presumption should extend to each of the representations certified by the Attorney General here, including the representation that the federal contract encompasses the challenged activity. *Cf. Billings*, 57 F.3d at 800 (applying the presumption to the question of "whether a defendant is a federal employee.").

First, Plaintiff did not rebut the presumption that the tribal self-governance agreement encompassed the law enforcement duties performed by Officer Gates. Plaintiff submitted as evidence a Multi-Year Funding Agreement for 2011–2015 between the Lummi Nation and the United States. This funding agreement served as a 638 contract for the tribe's "assumption of responsibilities" for various programs and services that would otherwise be provided by the BIA.

One of these services was law enforcement. By statute, BIA employees may be authorized to perform law enforcement duties, including executing or serving "orders relating to a crime committed in Indian country and issued under" tribal law. 25 U.S.C. § 2803(2)(B). These law enforcement duties may be reassigned, as here, to tribal employees pursuant to 638 contracts. *See Salazar v. Ramah Navajo Chapters*, 567 U.S. 182, 185 (2012). As the district court acknowledged, the funding agreement "specifically contemplated that the tribe would provide for its own law enforcement."[10]

Next, Plaintiff failed to rebut the presumption that Officer Gates acted within the scope of his employment when he executed the forfeiture. Instead, Plaintiff speculated that the forfeiture exceeded the authority of the Lummi Tribe. As the district court observed, however, "Plaintiff appears to have confused the question of tribal jurisdiction

---

[10] Because the funding agreement provides sufficient basis to conclude that the government contemplated the Lummi Tribe's assumption of law enforcement duties under a 638 contract, we deny the government's motion for judicial notice of the Compact of Self-Governance.

(and whether Defendant Gates's actions were legally authorized) with the question of whether Defendant Gates acted within the scope of his employment" when he effected the forfeiture.[11]

To answer the question of whether Officer Gates was acting within the scope of his employment, we look to Washington law.[12] Washington courts have held that an employee acts within the scope of employment when performing duties required by the contract of employment or by "specific direction of [the] employer," or "in furtherance of the employer's interest." *Ball-Foster Glass Container Co. v. Giovanelli*, 163 Wash. 2d 133, 160 (2008) (en banc). By failing to come forward with evidence, Plaintiff has not met his burden of showing that the execution of the forfeiture was not within the scope of Officer Gates' employment duties.

On both prongs of *Shirk*'s analysis, Plaintiff has not rebutted the presumptions created by the Attorney General's

---

[11] Similarly, Plaintiff claims that the agreement cannot encompass Officer Gates' conduct because it does not expressly authorize the execution of law enforcement duties off the reservation. In support of this proposition, Plaintiff cites a concurring opinion in *Shirk*. *See Shirk*, 773 F.3d at 1009 (Sack, J., concurring). The concurrence reasoned that certain tribal officers had the authority to enforce state law off the reservation because the agreement required the tribal officers to be certified as state peace officers. *Id*. Plaintiff argues that the "reverse premise applies." However, Plaintiff's argument commits the logical fallacy of mistaking a sufficient factor for a necessary one. In addition, the concurrence acknowledged that it addressed an issue that "the panel's opinion need not and, properly . . . does not reach." *Id*.

[12] We recognize, however, that the federal agreement "defines the relevant 'employment' for purposes of the scope of employment analysis at step two." *Shirk*, 773 F.3d at 1006.

certification. Accordingly, we hold that the district court properly substituted the United States as a party for Officer Gates pursuant to the Westfall Act.

## C.  Dismissal with Prejudice

The district court dismissed this action as a result of Wilson's failure to meet exhaustion requirements. Although we hold that dismissal on this ground was proper, we conclude that the district court erred by dismissing the entire action with prejudice.

When a party has not exhausted tribal remedies, a district court may elect to "dismiss a case or stay the action while a tribal court handles the matter." *Atwood*, 513 F.3d at 948. The exhaustion process leaves open "the possibility that the exercise of [tribal] jurisdiction [can] be later challenged in federal court." *Brendale v. Confederated Tribes & Bands of Yakima Indian Nation*, 492 U.S. 408, 427 n.10 (1989). Here, the district court dismissed Plaintiff's case against Horton's Towing with prejudice, but did not specify the reason why pursuing the case would be futile if, at a later date, Plaintiff returned to federal court after exhausting his remedies before the Lummi Tribal Court.

Similarly, the district court did not adequately explain the basis for its dismissal with prejudice of Plaintiff's suit against the United States. When a plaintiff fails to exhaust administrative remedies against the United States, as required by the FTCA, the proper route is dismissal. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). However, a plaintiff may generally return to federal court after timely exhausting administrative remedies before the relevant federal agency. *See* 28 U.S.C. § 2679(d)(5)(B); *see also Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

Because Plaintiff can potentially renew his claims in federal court after the appropriate remedies have been exhausted, we hold that dismissal with prejudice was improper.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order entering summary judgment against Plaintiff. We **VACATE** the district court's judgment dismissing Plaintiff's action with prejudice and **REMAND** to the district court. On remand, the district court shall enter judgment dismissing this action without prejudice to refiling after Plaintiff has exhausted his remedies. Each party shall bear its own costs.

**AFFIRMED IN PART; VACATED IN PART; and REMANDED.**